In the Matter of the Application of ANNA M. REGER, as Administratrix, etc., of FREDERICK REGER, Deceased, Petitioner, against EDWARD P. MULROONEY, Police Commissioner of The City of New York, Respondent.

In the Matter of the Application of ARTHUR H. KNOTT, Petitioner, against EDWARD P. MULROONEY, Police Commissioner of The City of New York, Respondent.

In the Matter of the Application of LOUIS M. J. EISNER, Petitioner, against EDWARD P. MULROONEY, Police Commissioner of The City of New York, Respondent.

First Department, April 13, 1934.

*Jacob Shientag*, for the petitioners.

*Henry J. Shields* of counsel [*Paul Windels, Corporation Counsel*], for the respondent.

MERRELL, J.   The charges preferred against the petitioners were that the petitioner Knott, on April 18, 1929, had arrested Lucy Berini and Raymond Mendez at No. 200 West Nineteenth street, New York city, for an alleged violation of section 887 of the Code of Criminal Procedure, without having obtained sufficient evidence warranting the arrest of said persons; and that Patrolman Knott, in his report, mentioned one Charles Collins as the name of the person found in the premises at the time of the arrest of the Berini woman and Mendez, and that said patrolman knew that said name was not the true name of such person; and that the said Patrolman Knott, in the prosecution of said defendants in Magistrates' Court, testified falsely against said defendants.   Patrolmen Reger and Eisner were charged with being present at said arrest, and with knowledge of the alleged misconduct of Patrolman Knott. Patrolman Eisner was also  charged with having made several arrests without having obtained sufficient evidence to warrant the same; that he falsely reported the name of the person or persons found in the premises at the time of said arrests, although he knew the true and correct names of such persons, and thereafter testified falsely and improperly against said defendants in Magistrates' Court.

The sole witness appearing before the police commissioner in

support of the charges against said petitioners was one Chile Maphocha Acuna. Acuna, at the hearing, gave testimony to the effect that he was the person found in the house at the time of the arrest of the Berini woman and Mendez, and that he was well known to the petitioners, having had previous relations with the petitioners in his capacity as a stool pigeon and in obtaining testimony in relation to the " framing " of dissolute women by members of the vice squad of the New York police department. The petitioners denied the testimony of Acuna as to their previous acquaintance with him, and denied that they knew that the man found upon the premises at the time of the arrest of the Berini woman and Mendez was other than Collins, as reported by Patrolman Knott. We thus have before us the testimony of Acuna, categorically denied *in toto* by the testimony of the three petitioners. In weighing the testimony of the accusing witness, Acuna, as against that of the petitioners, Knott, Reger and Eisner, recourse is properly had to the character of the opposing witnesses. All three of the petitioners, for many years prior to the filing of the charges against them here under review, were members of the police force of the city of New York in good standing. Officer Reger, now deceased, was first appointed a patrolman on probation on October 26, 1911. His appointment was made permanent on April 25, 1912. From that date to the time of his dismissal by the police commissioner, a period of nearly twenty years, not a single charge of any kind had ever been preferred against him. At the trial former Police Inspector John M. Sweeney, who had served thirty-nine years with the New York police department and for four years as chief of police at Long Beach, Long Island, testified that he was acquainted with Patrolman Reger in his capacity as police officer for ten or twelve years, and that " his reputation has been that of an honest, truthful, sober, industrious police officer, all the years I know him." Patrolman Eisner was appointed a patrolman on October 13, 1922, and received his permanent appointment April 12, 1923, and, therefore, had eight years of service, during which term he was fined two and one-half days for minor infractions of the rules of the department. Patrolman Knott became a probationer on August 25, 1924, and was permanently appointed on February 24, 1925. During his entire service until dismissed he was reprimanded only once, for failing to discover the operation of a still. Character testimony of a large number of disinterested witnesses of unquestionably high character as citizens of the community was given at the trial before the police commissioner of the good character and reputation of all three of the petitioners. As against the testimony of the three petitioners of such unblemished records

on the police force, whose honesty and truthfulness were attested by the disinterested testimony of citizens of high standing in the community, we have the diametrically opposed testimony of the accuser, Acuna.

We are of the opinion that the orders of certiorari should be sustained, the determination of the police commissioner annulled, and new trials granted, with costs to the petitioners, appellants, in each case, upon the ground that the determinations of the said police commissioner are contrary to and against the weight of the evidence; that no credible evidence was produced at the trial justifying the police commissioner in finding either of the petitioners guilty of the charges preferred against him, and that the said determinations of the police commissioner are entirely unsupported by any credible evidence.

The charges of misconduct on the part of the petitioners were filed in December, 1930, and were based solely on " revelations " by one Chile Maphocha Acuna, of most unsavory reputation and of whose activities this court is not unfamiliar. On numerous occasions this court and the Court of Appeals have had occasion to pass upon the character of this witness, Acuna, and as to the credibility of his testimony in court. In the prevailing opinion of Mr. Justice O'MALLEY in *People* v. *Tait* (234 App. Div. 433) Acuna was denounced in the following language: " True it is that the testimony against him [Tait] comes largely from tainted sources. The assistant district attorney who argued this appeal, as did the assistant who presented it to the jury, frankly conceded that the witnesses Acuna, Sands and Pridgen were disreputable characters. Acuna, in addition to being a confessed ' stool pigeon,' was twice convicted, once of petit larceny and again of extortion." In the same case (*People* v. *Tait*), Justice MERRELL, writing for the dissenting members of the court, had this to say of Acuna: " It must be borne in mind that the trial of the defendant in Court of General Sessions was held soon after the revelations as to the alleged ' framing ' of dissolute women by members of the vice squad of the New York police department, and at a time when public feeling ran high and prejudice had been aroused against members of the vice squad for such claimed dishonest practices. A sensational public press, ever ready to seize upon the spectacular, did much to influence the public mind against honest peace officers as a whole for wrongful acts committed by a comparative few. It was at such a time and under such unfavorable circumstances that the defendant was indicted and tried. There was not a scintilla of evidence, nor was there any claim, that the defendant had received anything as a consideration for the alleged false testi-

mony which he was charged with having given in Magistrates' Court. The testimony was merely that he had sworn falsely. * * * The last mentioned — the witness Acuna — was a self-confessed criminal. His testimony at the trial was such that the jury was not justified in placing the slightest credence thereon. He posed as a so-called ' stool pigeon ' for the police in the alleged ' framing ' of lewd women. Acuna admitted on cross-examination that he received seven dollars a day, excluding Sundays, from the so-called Seabury investigation, and also had received from another source a like sum of seven dollars a day for testimony which he gave at such investigation. He also admitted, on cross-examination, that he received $400 from the New York *Daily News* and $2,000 from the New York *Evening Graphic*, ' tabloid ' publications of New York city, to enable the so-called purveyors of news to obtain, to use the vernacular, a ' scoop ' over less sensational newspapers. His testimony was contradictory and evasive. *His admissions branded him as a creature of the lowest type."* While, by a majority vote, this court affirmed the conviction of Tait, such affirmance was because there was other testimony and corroborative circumstances, and was not by reason of the wholly discredited testimony of the unsavory Acuna. On appeal to the Court of Appeals the conviction of Tait was affirmed by a divided court, Judges CRANE and LEHMAN dissenting. (259 N. Y. 599.) On allowing an appeal to the Court of Appeals in *People* v. *Tait,* Judge CRANE, in an opinion (not officially reported), had this to say of Acuna: " The principal witnesses against him were Icie Sands and a stool pigeon named Acuna. Although she failed to take the stand in her own case, she testified against the officer that while she was caught in her bedroom with a man named Acuna, no improper relations took place. Acuna, the stool pigeon, swore against the officer to the effect that he was in the room with the woman, but that no time was allowed to consummate the offense. These are the two principal witnesses against the officer on the perjury charge, and both have been previously convicted of crime more than once.

" The whole question turns upon the veracity of the officer, who apparently had a good reputation — or these two disreputable characters. * * * Acuna had been twice convicted of other crimes, once in Kings county before Judge HASKELL in the County Court." This court had further occasion to consider Acuna in the case of *People* v. *Stiglin* (238 App. Div. 407). The defendant in that case had been convicted upon the testimony of this same Acuna. Mr. Justice O'MALLEY, writing for this court on reversal of the judgment of conviction of Stiglin, commented on the character of Acuna in the following language: " The witness Acuna, as

appears from the record in *People* v. *Tait* (*supra*), was an unsavory character. He had been twice convicted. It is urged he had the strongest motive to falsify because of the fact that he had received substantial sums of money for his services in furnishing information. He had received some $2,400 from two newspapers and in addition, had been receiving a per diem allowance of seven dollars from those in charge of the Magistrates' Courts' investigation, and a similar allowance for a considerable period of time from the district attorney's office in assisting in the preparation and trial of cases.

" It is the claim of the defense that he had access to the daily memorandum book of the defendant which contained a record of the arrest of the Sakwich and Domzalski girls prior to his having testified publicly in the Magistrates' Courts investigation. In addition it was shown that he claimed to have been the informer or stool pigeon in two prostitution arrests which took place at exactly the same hour on June 18, 1929, one at 71 West Seventy-first street and the other on East One Hundred and Seventeenth street. Upon his cross-examination on this trial he was unable to explain this discrepancy except by saying that it must have been the stenographer's error when he was furnishing the information." Mr. Justice SHERMAN, of this court, in a concurring opinion in the *Stiglin* case, passed upon Acuna and the value of his testimony in the following language: " The proof of perjury committed in the Magistrate's Court rests entirely upon the testimony of two prostitutes who, with light regard for their oath, have erred in their testimony in so many respects as to render their evidence utterly unworthy of belief, and of one Acuna, an infamous self-confessed criminal and stool pigeon, who did not claim to have ever done an honest day's work and who, in this case, was flatly contradicted by records and testimony which show that he cannot be relied upon as a truth teller. He had achieved prominence as a witness in the investigation of the Magistrates' Courts, and had appeared as a witness against malefactors responsible for the evils which were then revealed. He has successfully accused some of those with whom he had acted in concert in unjustly convicting women in the Women's Court. Here, however, records in evidence show that his testimony cannot be true. He admits the receipt of fairly large sums from newspapers which paid him for articles which they printed and also of moneys for his upkeep from the investigating committee and the district attorney's office."

It is claimed in support of the determination of the police commissioner that as to the charges against the petitioners Reger and Knott, the said petitioners gave contradictory testimony corroborative of the testimony of Acuna. Careful analysis of this testimony

shows there is in reality no material contradiction in the testimony of the accused officers. Whatever discrepancies there may be in their testimony are regarding immaterial details concerning which the petitioners may well have differed. Such contradictions as are claimed to have been made, short of showing perjury on the part of the witnesses, really show that each witness was testifying truthfully.

It remains to be determined by this court whether members of the police force, of unblemished reputation, of long and honorable service, may be found guilty and dismissed from the service upon the unsupported testimony of the paid perjurer, Acuna, stigmatized by the Court of Appeals as a " disreputable character," and variously branded by this court as " confessed ' stool pigeon,' * * * twice convicted, once of petit larceny and again of extortion," as " a creature of the lowest type," as " an infamous self-confessed criminal and stool pigeon, who did not claim to have ever done an honest day's work," and who " cannot be relied upon as a truth teller," whose " testimony cannot be true," and who, at the trial of the petitioners was thoroughly discredited and who gave most contradictory and improbable testimony. In view of our intimate acquaintance with this disreputable character, who is the accuser of the petitioners, we have no hesitation in stating our disbelief of the testimony which he gave at the trial of the petitioners before the police commissioner. This court will not permit a finding of guilt and the dismissal of the petitioners to stand upon the testimony given before the police commissioner.

The evidence before the police commissioner clearly indicates that Acuna's testimony was actuated by a desire for revenge against the petitioners. At the trial of Mrs. Berini in Magistrates' Court, Patrolman Knott immediately pointed out Acuna as the man he had found in the apartment with Mrs. Berini at which time Acuna described himself as Charles Collins. Patrolman Reger was Knott's partner on the raid made upon the Berini apartment. Acuna at that time was a married man. At the trial before the commissioner, Patrolmen Reger and Knott reaffirmed the fact that Acuna was the man who testified in Magistrates' Court in behalf of Mrs. Berini and was the man whom they found in the apartment. They testified that it was not until the proceedings before the police commissioner were instituted that they learned his right name. Patrolman Eisner, in August, 1929, arrested Acuna, as a result of which he was sentenced by the Court of Special Sessions of the City of New York to the penitentiary, where he spent eleven months. The hatred which Acuna bore toward said officers is readily understood by his claim that he was taken into custody at that time by Eisner and Knott and another police officer whose name he could

not remember. In refutation of such statement, Patrolman Walter Heitzman was called and testified that he was present when Patrolman Eisner and another patrolman named Gleason arrested Acuna, and Knott was not there and had nothing to do with it. Upon being recalled, Acuna testified that the arresting officers were Eisner and Knott, and he then identified Patrolman Gleason as the third officer. He testified that he did not see Patrolman Heitzman there. The animus of Acuna to charge the petitioners with misconduct is, therefore, apparent.

We are, furthermore, of the opinion that Deputy Police Commissioner Ruttenberg, who heard the testimony and made findings of fact sustaining the charges against the petitioners, was disqualified from hearing the matter. In the course of the trial it appeared that Ruttenberg had held private hearings at which the complaining witness, Acuna, had testified before him. Having conducted private hearings in which Acuna had testified and upon which the charges against the petitioners were framed, the commissioner, we think, disqualified himself from sitting as an impartial judge in the proceedings against the petitioners. The police commissioner occupied no different position with reference to the petitioners than any judge in any other court. He owed to the petitioners the same duties and obligations. In the hearing upon the charges against the petitioners and in passing thereon, the commissioner exercised all the functions of a judicial officer. He not only tried the petitioners upon the charges against them, but he also made findings and inflicted the punishment of dismissal from the police force upon the petitioners. He thus acted in a judicial capacity. In *People ex rel. Tappin* v. *Cropsey* (178 App. Div. 180) the Appellate Division, Second Department, wrote as follows: " The hearing upon charges for making untruthful answers to the commissioner was subsequently had before him in his judicial capacity, and without imputing any improper motive or unfairness to the commissioner, because under the charter   *   *   *   the duty of passing upon the question as to whether an officer against whom charges have been preferred is upon him, nevertheless, in view of the said information which the commissioner possessed, and which was not accessible to the relator, and his pre-existing determination, as expressed by the commissioner in case relator denied, we feel that relator has not had that hearing which the law contemplates." *People ex rel. Tappin* v. *Cropsey* was affirmed by the Court of Appeals in 224 New York, 564. In *People* v. *Haas* (105 App. Div. 119) Mr. Justice JENKS, writing for the Appellate Division, Second Department, with reference to a like situation, said (at p. 122): " However upright the judge, and however free from the slightest

inclination but to do justice, there is peril of his unconscious bias or prejudice, or lest any former opinion formed *ex parte* may still linger to affect unconsciously his present judgment, or lest he may be moved or swayed unconsciously by his knowledge of the facts which may not be revealed or stated at the trial, or cannot under the rules of evidence. No effort of the will can shut out memory; there is no art of forgetting. We cannot be certain that the human mind will deliberate and determine unaffected by that which it knows, but which it should forget in that process."

Of course, we are unable to say that what transpired at the private hearings, at which Acuna had testified before the police commissioner, affected the police commissioner when he came to sit as a judicial officer passing upon the charges against the petitioners resulting from such private hearings. Nevertheless, in our opinion, the police commissioner may well have been affected by the information which he obtained through such private hearings. There certainly was no necessity for holding any private hearings in advance of the trial herein. All the matters involved had been investigated in the hearings upon the so-called Seabury investigation. We do not know what transpired at these private hearings at which Acuna testified before the police commissioner, but we do know that such private hearings were had. We think the petitioners were entitled to be tried before an impartial officer unaffected by any possible impression which such judicial officer may have formed as the result of private hearings at which the petitioners were not present.

The orders of certiorari should be sustained, the determinations of the police commissioner annulled, and new trials granted the petitioners, and, in the meantime, the petitioners should be reinstated as members in good standing of the police force of the city of New York, with fifty dollars costs and disbursements to the petitioners, appellants, against the defendant, respondent.

O'MALLEY and UNTERMYER, JJ., concur; FINCH, P. J., dissents and votes to dismiss the orders of certiorari and confirm the determination of respondent.

FINCH, P. J. (dissenting). The determinations of the police commissioner should be sustained, since the testimony, if true, upon which the commissioner acted is sufficient to affirm his findings. It is true that the record of the witness Acuna is not impeccable. But what can be expected, where the conditions involved are as unsavory and disgusting as those in the case at bar In ordinary course, men of character would not be found as witnesses of acts and facts so degrading. Normally and often the only way the lowest

form of guilt can be uncovered and punished as in the case at bar is by means of witnesses to it, who are willing finally to tell the truth. The record of Acuna does not in itself call for the rejection of his testimony by the commissioner as a matter of law, but is merely a factor to be given consideration by the trial judge in weighing the evidence. The commissioner, from his experience, is peculiarly qualified to pass upon the weight to be given the testimony of the respective witnesses under all the circumstances of this case. Moreover, having in mind the experience of the commissioner, this court over the course of years has been very careful not to override his decision upon the facts. As was said by Judge RICH, in *People ex rel. Brown* v. *Greene* (106 App. Div. 230; affd., 184 N. Y. 565): " The holding of the appellate courts of this State has uniformly been that the good of the service [police department] requires that a wide discretion should be vested in police commissioners, and that their judgment and determination in a given case will not be disturbed unless there is an absence of evidence to sustain it. They being the statutory judges of offenses against the discipline and efficiency of the police force under their jurisdiction, their findings and determinations on the facts, when the evidence is conflicting and contradictory, should be regarded as conclusive, when there is, as in this case, sufficient evidence, if believed, to sustain their determinations."

Moreover, in the case at bar there is much more upon which to rest the decision of the commissioner than in the ordinary similar case. In the ordinary case the testimony of Acuna standing alone would be amply sufficient, if believed by the commissioner, to sustain his order, but in this case his testimony is strengthened by the fact that these defendants palpably committed perjury in denying that they knew Acuna when the facts were obviously otherwise. This offsets the criticism of Acuna. The commissioner had to choose between testimony none of which was free from attack upon credibility.

The orders of certiorari should be dismissed and the determinations of the police commissioner should be confirmed.

Orders of certiorari sustained, the determination of the police commissioner annulled, new trials granted to the petitioners, and, in the meantime, the petitioners reinstated as members in good standing of the police force of the city of New York, with fifty dollars costs and disbursements to the petitioners.