In the Matter of ROBERT MERRITT, Respondent, against HERBERT B. SWOPE et al., Constituting the Racing Commission of the State of New York, et al., Appellants.

In the Matter of ROBERT MERRITT, Petitioner, against HERBERT B. SWOPE et al., Constituting the Racing Commission of the State of New York, et al., Respondents. JOSEPH E. DAVIS et al., Respondents.

First Department, March 10, 1944.

*Martin A. Schenck* of counsel (*Joseph S. Auerbach, Harold C. McCollom, Kenneth W. Greenawalt* with him on the brief; *Davies, Auerbach, Cornell & Hardy,* attorneys), for Jockey Club of the State of New York as appellant from the order denying motion to dismiss the petition, and as respondent in proceeding pursuant to article 78 of the Civil Practice Act.

*Edmund H. H. Caddy* of counsel (*Orrin G. Judd* and *John P. Powers* with him on the brief; *Nathaniel L. Goldstein, Attorney-General,* attorney), for Racing Commission of the State of New York as appellant from the order denying motion to dismiss the petition, and as respondent in proceeding pursuant to article 78 of the Civil Practice Act.

*William Seligson* of counsel for Robert Merritt as respondent on the order denying motion to dismiss the petition and as petitioner in the proceeding pursuant to article 78 of the Civil Practice Act.

UNTERMYER, J. Petitioner is a professional jockey who, except during 1939 and 1940, has held a license as such for the years 1933 to 1942. On May 1, 1943, pursuant to subdivision 1 of section 9-b of chapter 440 of the Laws of 1926 (added by L. 1934, ch. 310 as amd. L. 1935, ch. 613, L. 1939, ch. 837), he applied to the Jockey Club for a license for the year 1943. After the Jockey Club had failed to take action on the application for more than fifteen days, the petitioner demanded a hearing before a joint board constituted as provided in subdivision 2 of section 9-b. A hearing on the application was held on June 21, 1943, before a joint board consisting of the State Racing Commission and two stewards of the Jockey Club which resulted on July 7, 1943, in a decision sustaining the refusal of the Jockey Club to issue a license to the petitioner. That decision was followed by the institution of this proceeding.

By subdivision 1 of section 9-b it is provided that: " For the purpose of maintaining a proper control over race meet-

ings conducted pursuant to section seven of this act, the Jockey Club shall license owners, trainers and jockeys at running races * * *.'' By subdivision 2 it is provided that: '' The failure of the Jockey Club * * * to act upon an application for a license within fifteen days shall be deemed a refusal of the license. Upon the application of a person whose license has been refused or revoked, and within ten days after service on such person of a notice of such refusal or revocation, such person shall be entitled to a hearing before a joint session of the State Racing Commission and two stewards of the Jockey Club * * * which, acting as a board, shall take final action thereon.''

After the institution of this proceeding, both the State Racing Commission and the Jockey Club moved to dismiss the petition as insufficient in law upon the ground that the action of the Commission in refusing a license to the petitioner was not subject to judicial review. That motion was denied by the Special Term. From that denial both the Commission and the Jockey Club have appealed.

We deem it unnecessary to determine at the present time whether and to what extent the determination of the Commission on issues of fact is subject to review, for the petition alleges that the action of the Commission in sustaining the refusal of the Jockey Club to issue the license was taken without a proper hearing accorded to the petitioner. If that fundamental statutory requirement is found to have been violated, as it is alleged, then the determination must be set aside without consideration of the weight of the evidence before the board.

Examination of the proceedings before the joint board satisfies us that the petitioner did not receive a hearing of the character contemplated by the statute. After the nature of the proceeding had been stated by the chairman, the petitioner and his counsel were requested temporarily to leave the hearing room. The request was complied with in the belief that the board desired to discuss matters not connected with the application. Instead, without the knowledge of the petitioner or his counsel, two representatives of the Jockey Club were sworn as witnesses and testified to facts which in their opinion justified the refusal of a license to the petitioner. These related principally to a charge that in two races the petitioner, riding a horse called '' Peep Show,'' had given him what in the record is described as an '' easy ride '' in order to establish more favorable odds and then to win a later race. These witnesses also testified that the petitioner's reputation was such as to render undesirable the granting of a license to him.

After these witnesses had concluded their testimony, the petitioner and his counsel were summoned before the board. They were informed by the chairman that " this is a formal joint meeting of the New York State Racing Commission and the Jockey Club convened to hear your appeal for the granting of a riding license for 1943." The petitioner then proceeded to testify concerning his record and general conduct as a jockey and to answer questions directed to him by members of the board. At no time was he informed of the nature of any charges which it was necessary to refute or explain nor was it suggested to him or to his counsel that other witnesses had already given testimony against him. Indeed, at the conclusion of the petitioner's testimony, which to him must have seemed uncontradicted and which on its face entitled him to a license, his counsel, addressing the board, said: " I would like to suggest — I don't know whether this is in order or not, because I am not familiar with your practice—that we be informed as to whether there are any specific charges against Mr. Merritt so that, if necessary, we can have the opportunity of an adjournment for the purpose of submitting evidence with respect to those specific charges " to which the chairman replied: " Mr. Merritt is not here in answer to any charges brought by the Jockey Club or the State Racing Commission; it is more of a negative process." Following that statement, the testimony was concluded undoubtedly in the belief on the part of the petitioner and his counsel that no specific charge or evidence of misconduct had been submitted and that the petitioner's uncontradicted testimony entitled him to a license. (*Matter of Picone* v. *Commissioner of Licenses*, 241 N. Y. 157; *Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330.)

After the action of the Jockey Club in refusing the license had been sustained by the Commission, this proceeding was instituted and thereafter the motions of the Jockey Club and of the Commission to dismiss the petition were denied. Then, for the first time in the return of the Commission, it was revealed to the petitioner that witnesses representing the Jockey Club, during his absence from the hearing room, had given evidence against him to the board. From the minutes annexed to the return of the Commission, the impression might reasonably be entertained that the petitioner and his counsel were present throughout the entire proceedings, for the minutes, which recite the appearance of petitioner's counsel at the beginning of the proceeding, fail to disclose the absence from the hearing room either of counsel or petitioner while the two witnesses testified

before the board. That impression is dispelled by a stipulation executed by all the parties which concedes that at the beginning of the proceedings "petitioner Merritt and his attorney * * * were asked to leave the hearing room" and "were not present in the hearing room during the taking of the testimony of the witnesses" who were called by the Jockey Club. It is also stipulated that "upon the return to the hearing room of the petitioner Merritt and his attorney * * * nothing was said to them by the respondents as to what had taken place in the hearing room during their absence."

The term "hearing" has been variously defined, depending on the particular conditions that were expected or foreseen. (*Norwegian Nitrogen Co.* v. *United States,* 288 U. S. 294.) It is not our purpose at this time to define the scope or meaning of that term as it appears in section 9-b, except to the extent necessary for the disposition of the present case. That a "hearing" must be fair in all respects and not a mere form to precede a predetermined result (*People ex rel. Packwood* v. *Riley,* 232 N. Y. 283) should not need to be restated by this court. Yet, the procedure which was followed rendered impossible a fair hearing on the application. Without his knowledge the board allowed witnesses to be sworn against the petitioner, whom he was not afforded an opportunity to confront or cross-examine. That, alone, would be sufficient to require the determination to be annulled. (*Matter of Lipschitz* v. *Mealey,* 259 App. Div. 640; *Matter of Reger* v. *Mulrooney,* 241 App. Div. 38.) But the ruling of the board even refused to the petitioner knowledge of the substance of the charges contained in the testimony thus received which it was therefore impossible for the petitioner to controvert with other proof. That, too, constituted the denial of a fundamental right. (*Matter of Citron* v. *O'Shea,* 244 App. Div. 158.) In that case we said: "Opportunity to be heard is not afforded if the party who is entitled to that opportunity is not informed of the nature of the charge until after it has been sustained. The right to a hearing necessarily presupposes that the party to be heard shall at least at some time before final decision be advised of the accusation which is to be met." By the procedure adopted by the board the petitioner was subjected to a double detriment in that not only was evidence received against him in his absence which forms an essential part of the record in this proceeding on which the board must have relied in refusing the license, but the board also declined to divulge the nature of the charges implicit therein. The hopelessness of his position is apparent when we ask ourselves how the peti-

tioner could have defended himself when not permitted to cross-examine his accusers nor even be present when they testified while at the same time he was denied knowledge of the accusations. Whatever else may be necessary to constitute a " hearing " there has been none within the statutory meaning of that term when such elemental rights as these have been ignored. (*Morgan* v. *United States*, 304 U. S. 1.)

The determination of the joint board should be annulled and the matter remitted to the board for a hearing in accordance with law, with fifty dollars costs and disbursements to the petitioner. The order so far as appealed from, denying the motions of The Jockey Club of the State of New York and the Racing Commission of the State of New York to dismiss the petition, should be affirmed.

MARTIN, P. J., TOWNLEY, GLENNON and DORE, JJ., concur.

Order so far as appealed from, unanimously affirmed. Determination unanimously annulled and the matter remitted to the joint board for a hearing in accordance with law, with fifty dollars costs and disbursements to the petitioner.