# COURT OF GENERAL SESSIONS — NEW YORK COUNTY.

## February, 1919.

## THE PEOPLE v. ANGELO GIORDANO.

### (106 Misc. 235.)

(1.) New trial*—Motion for, denied—Recanting witnesses—Burden of proof—Code Crim. Pro., § 465(7).

While the fact that witnesses for the People have recanted the testimony given by them on the trial of an indictment for murder in the first degree, does not in and of itself require the granting of a new trial, it is the duty of the court and trial judge, upon the hearing of a motion therefor, to examine said witnesses and, if possible, determine whether the recanting testimony is true, and unless convinced that it is or that there is a reasonable possibility of its being true, the motion for a new trial made under section 465(7) of the Code of Criminal Procedure will be denied.

(2.) Same—Burden of proof.

While on such a motion the burden is on the defendant to show by a preponderance of evidence why the judgment of conviction should be set aside he should not be required to prove his case beyond a reasonable doubt.

(3.) Same.

In view of the ease with which witnesses of bad character who run no risk of prosecution of perjury committed on the hearing of the motion and little or no risk upon the theory that they swore falsely upon the trial, may be induced to recant, such evidence should be most carefully scrutinized, and unless by a preponderance of evidence it is made to appear that the recanting testimony is true, the judgment of conviction must stand.

(4.) Same.

The record of the trial, the affidavits submitted, the testimony given on the hearing of the motion by two recanting witnesses, and the testimony of another of the People's witnesses, who, while not recanting his

---

* See notes, Vol. 14, p. 394; Vol. 21, p. 127.

testimony given on the trial, swore to certain facts tending to corroborate one of the recanting witnesses, considered, and *held*, that the testimony of the recanting witnesses given on the trial not having been proven false by a preponderance of testimony, the motion for a new trial will be denied.

MOTION for a new trial on ground of newly discovered evidence. (Code Crim. Pro., § 465, subd. 7.)

*Moss, Marcus & Wels* (*Frank Moss,* of counsel), for motion.

*Edward Swann, District Attorney* (*George N. Brothers, Assistant District Attorney,* of counsel), in opposition.

NOTT, J.:

This defendant was convicted of murder in the first degree on the 1st day of May, 1918.

On the 3d day of December, 1918, he moved that the verdict be set aside and a new trial be granted under the provisions of section 465 of the Code of Criminal Procedure, subdivision 7, alleging that since the trial, two of the witnesses for the People, Sylvester Amato and Nicalo Baranella, have recanted the testimony given by them at the trial, as appears by their affidavits submitted on the motion. In addition thereto, the moving papers contain the affidavit of another witness who was called upon the trial, Carmine Luongo, who, while not retracting his testimony on the trial, swears to certain facts tending to corroborate the recanting affidavit of Baranella. In addition to these three affidavits, the affidavit of one Troisi has been submitted, but in my opinion the matters therein alleged do not bring the affidavit within the provisions of the section, as there is no reason shown why the witness could not have been produced upon the trial. The other moving affidavits are those of counsel for the defendant and an attorney in Buffalo, and are merely supplementary to those specifically mentioned.

After carefully considering the above affidavits and the record on the trial, on the 30th day of December, 1918, I caused the witnesses Amato, Baranella and Luongo to be produced and they testified before me on the motion, the People calling Antonio Notaro and Officer De Martini in contradiction of the statements of the witnesses above mentioned. I have carefully considered the manner and bearing of the witnesses called upon the hearing and have since studied carefully the transcript of their testimony, their affidavits and their testimony upon the trial.

The defendant was convicted of the murder of one Guiseppe Verrazzano committed on the 6th day of October, 1916. The facts established by the verdict showed a most cold-blooded and atrocious murder. Verrazzano, a man evidently of bad character, a gambler, on the night in question was eating in a restaurant at 341 Broome street in the city and county of New York. Two men entered the restaurant, advanced to within a few feet of the deceased and opened a fusillade of shots from revolvers. The medical testimony showed that the deceased was struck by no less than six bullets, five of which passed entirely through the body of the deceased. The men made their escape from the restaurant, but one of them, Antonio Notaro, was followed by the police and arrested. He was subsequently tried in the criminal branch of the Supreme Court and acquitted. Thereafter, he and one Raffaela Daniello were indicted for certain homicides in the county of Kings, and thereupon Notaro confessed that he was one of the two men that killed Verrazzano, naming as the other slayer one Alfonso Sgroia. On the trial of the defendant herein both Notaro and Daniello testified that the defendant, Giordano, had procured Notaro and Sgroia, who were entire strangers to Verrazzano, to commit the murder and had pointed him out through the window of the restaurant.

These being the facts, the present motion casts a heavy bur-

den upon the court, for whatever be the decision the consequences are grave. Should the motion be granted, the recantation of the witnesses so seriously diminishes the evidence corroborating the evidence of the accomplices that an acquittal of the defendant will be extremely likely; and, if the recanting affidavits are false and the verdict true, a miscarriage of justice would follow the conviction of the defendant for a most cold-blooded and atrocious murder. On the other hand, if the recanting affidavits are true and the verdict based upon false testimony, the defendant is entitled to a new trial, and the denial of that right would entail consequences the seriousness of which are obvious.

In the case of People v. Shilitano (218 N. Y. 161) the Court of Appeals has decided that the fact that witnesses have recanted their former testimony does not in and of itself require the granting of a new trial, as such rule of law would obviously lead to grave abuses; but that it is the duty of the trial judge to examine the witnesses and determine, if possible, whether or not their recanting testimony is true or false, and unless convinced that it is true or at least (in the language of Judge CARDOZO's concurring opinion) that there is a reasonable probability of its being true, he must deny the action. Obviously, where the solemn judgment of a court is attacked and set aside, the burden of proof rests upon him who attacks it, and while, perhaps, he should not be required to prove his case beyond a reasonable doubt, he should prove it by preponderance of evidence.

In the case of People v. Shilitano (*supra*), Judge SEABURY, in delivering the opinion of the court, says: "There is no form of proof so unreliable as recanting testimony. In the popular mind it is often regarded as of great importance. Those experienced in the administration of the criminal law know well its untrustworthy character."

An experience of twelve years in the office of the district

attorney of New York county and five years upon the bench
of the Court of General Sessions leads me to concur fully in
that opinion.    It is safe to assert that in a vast majority of
cases, where witnesses of low character and bad associations
have testified against former friends and associates, almost the
first thing they do after leaving the stand is to endeavor to
rehabilitate themselves in the eyes of their associates from the
stigma of having proven false to their friends, by asserting that
they gave their testimony under pressure and by expressing
sorrow for that necessity.

In his dissenting opinion in the same case, Judge HOGAN
says that the experience of witnesses who falsely recant " is apt
to prove sad and expensive," because of the provisions of the
Penal Law provided for such contingencies.    I fear that the
record of such cases is against this assertion.    I do not recall
in my seventeen years' experience in the criminal courts a
single case where a recanting witness has been convicted of
perjury committed either at the trial or by his recanting testi-
mony.    On a prosecution for perjury under these circum-
stances, it must be alleged and proven which statement by the
witness was true and which false; and this necessity presents
more difficulties than at first would be supposed.    In the present
case, for instance, it would be impossible to convict the witness
Amato of perjury committed upon this motion; for, while his
testimony at the trial would be given in evidence as an admis-
sion against him, there would be no other testimony possible
or available to support that admission as required by the Code.
On the other hand, the prosecuting authorities vigorously con-
tend that the testimony given by the witness on the trial was
true, and that he should not be prosecuted thereafter on the
theory that it was false; and no prosecution on that theory
would be possible without calling the defendant as a witness
to testify against the man who had aided him by his testimony
on the motion.    Therefore, in the present case, the recanting

witness, Amato, runs no risk for a prosecution of perjury committed upon the motion and little or no risk upon the theory that he swore falsely upon the trial. It is evident, therefore, in view of the ease with which witnesses of bad character may be induced to recant, that such evidence should be most carefully scrutinized and that it should be made to appear, by at least a preponderance of evidence, that the recanting testimony is true before a judgment of conviction should be set aside.

In view of the foregoing facts I have most carefully considered the testimony of these witnesses. The witness Amato testified upon the trial that the defendant, Giordano, delivered certain moneys to him to give to the witness Notaro, who was at the time under arrest charged with this murder. Upon this motion he states that that testimony was false and that while he did give money to Notaro, the money was his own and that the defendant never requested him to give it to Notaro, and he states that he was induced to give this false testimony by the urgings of the accomplice and witness Notaro, who, in the Fifty-third street prison told him that such testimony would aid him, Notaro, and would not injure the defendant. He admits that he saw Giordano shortly before he went to see Notaro in the Tombs, but denies that Giordano gave him the money. He states that after the defendant was convicted he met by chance the defendant's brother in the city of Buffalo and told him of the falsity of his testimony. It does not appear why the defendant's brother took the trip to Buffalo to see Amato, or what reason he had to suppose that Amato would change his testimony. Amato states that at the time Notaro persuaded him in the police court prison to give the false testimony, Officer De Martini was present. Notaro was called as a witness on the motion by the People and denied the allegations made by Amato, and Officer De Martini, who was likewise called, testified that he was present at the interview between Notaro and Amato at the Fifty-third street prison, and that

the conversation between the men was in the Italian language, which he, De Martini, heard and understood, and that the testimony of Amato was false in alleging that Notaro procured him to swear falsely.

Taking Amato's testimony on this motion by itself, it has failed to carry conviction of its truth to my mind.    He is a man of doubtful character, to say the least, and a man of considerable shrewdness and intelligence and his assertion that he did not suppose that his testimony upon the trial could injure the defendant is in my opinion incredible.    He did not come forward of his own motion to rectify a wrong, but was first approached by the defendant's brother; and even on his own testimony, I think it is impossible to determine with any degree of reasonable probability that his present testimony is true and his former testimony false.    But in addition, he is flatly contradicted by Police Officer De Martini, whose character and record have not been impeached, to say nothing of the contradictory testimony of Notaro, on which, however, I have placed little or no reliance.    Taking into consideration the testimony of Officer De Martini, not only am I not convinced that the witness Amato has told the truth upon this motion, but, on the contrary, in my opinion, the reasonable probabilities are to the contrary.

The witness Baranella testified on the trial that in the late afternoon before the murder he met Notaro in the cafe at 195 Grand street, and that he and Notaro went to a restaurant to get a glass of wine, after which they went to the cafe of one Ferrara and that thereafter, in the evening, they went to the theatre.    After the theatre closed they separated and the witness Baranella returned to Ferrara's cafe at about eleven-thirty P. M., where he saw the defendant.    On this motion he testified that he saw the defendant in Ferrara's cafe on the first occasion when he was in that place, which was late in the afternoon, and that he did not see him on the second occasion when he returned

after the theatre. He also alleges that he was induced by Notara to swear falsely that it was on the second visit to Ferrara's at half-past eleven that he saw the defendant. Notaro denies that he so induced the witness to testify. In the witness's moving affidavit the statement is made unqualifiedly that the testimony given by him upon the trial was false, but in the oral evidence of the witness he falls short of such certainty. He also was procured as a witness upon this motion by the defendant's brother, whom he says he met on the street and who said: " You made a mistake when you said that my brother at eleven o'clock was in the coffe house that evening. Other witnesses say that my brother was not there, so you must make a mistake    *    *    * And I says to the brother ' that if you think so it must be that my eyes did not see clear that night, I must have made a mistake '    *    *    *   I am not sure if he was in the coffee house that night about eleven o'clock." He also asserts that he did not believe his testimony upon the trial would hurt anybody. He further states: " I made that statement upstairs and I said the same thing down here (referring to his statement in the district attorney's office and his testimony in court) but I could swear to you on the life of my children that I am not sure of it." He states that in the district attorney's office Notaro told him that the defendant was present at half-past eleven " and that made an impression on my mind that I saw him there and I said that    *    *    *    After that I thought I saw him there   *    *    * I though that until the brother told me, ' look here, my brother was not there at that time; your conscience will be hurt,' and then I thought different    *    *    *    Then I reflect in my own mind and I came to the conclusion that I could not state that he was there or was not there." While in answer to some of the questions on the motion he stated positively that the defendant was not present at half-past eleven, yet statements such as those above quoted run through all his testimony and make it clear that what he now asserts is, that he is not at the present time

sure in his own mind that the testimony he gave on the trial is true and that this uncertainty arose after an interview with the defendant's brother. When it is recalled that this testimony was delivered in December, 1918; that the trial was in April, 1918, and that the murder was in October, 1916, it seems clear that the uncertainty of recollection now arising is an utterly insufficient basis for upsetting the judgment heretofore rendered. Otherwise, a judgment could always be upset when the recollection of a witness had become dimmed by the lapse of time.

The witness Luongo upon the motion made affidavit and testified to certain statements made in his presence by a man named Sgroia, which were to the effect that Notaro had told him that he was procuring false testimony. Sgroia was not a witness upon the trial and statements made by him in the presence of Luongo are purely hearsay and inadmissible. Luongo also testified that he heard Notaro urge Baranella to say that it was eleven-thirty p. m. he saw the defendant. Luongo had been convicted previously of crime and he also was approached by the defendant's brother as to this proceeding. The sum of his and Baranella's testimony on this point has not convinced me that Baranella's testimony upon the trial was false in view of Baranella's own testimony as to his state of recollection above quoted.

As a result, therefore, of a long and careful study of the record of the trial, the affidavits submitted and the testimony taken, and consideration and reflection thereon, I am unable to reach the conclusion that the testimony of witnesses upon the trial has been proven false by a preponderance of evidence, and I am therefore constrained to deny the motion.

Motion denied.