THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* PHILIP CARUSO, Defendant.

County Court, Kings County, September 6, 1939.

*William F. X. Geoghan,* District Attorney [*Hyman Barshay, Assistant District Attorney,* of counsel], for the plaintiff.

*Frank B. DiGiovanna,* for the defendant.

BRANCATO, J. This is a motion for a new trial pursuant to subdivision 7 of section 465 of the Code of Criminal Procedure, upon the ground of newly-discovered evidence consisting of a recantation of defendant's identification by the complaining witness and of the confessions of two individuals made since the defendant's conviction who, having plead guilty as accomplices in the commission of the robbery involved, exculpate the defendant of any participation therein.

I have read the record of defendant's trial and the conclusion is impelling that, upon the evidence adduced, the jury was justified in finding the defendant guilty beyond a reasonable doubt. The sentence of the court, of course, was mandatory in a conviction for first degree robbery. (Penal Law, § 2125.)

The identification by the complaining witness of the defendant as one of the three bandits who robbed him, and his recital of the facts attending the robbery, were positive and convincing. They are substantially as follows:

On July 29, 1938, Eugene Scaramellino, the complainant, was seated at the driver's wheel of his automobile which was parked on Forty-fifth street near Fourth avenue, when three bandits almost simultaneously came into his car. He saw one of them as he entered the automobile after opening the right front door, gun in hand, who commanded him "not to make a sound otherwise I will let you have it." The bandit sat himself on complainant's right. The second robber entered through the left front door of the car, pushed the complainant towards the center of the seat and sat behind the driving wheel so that the complainant was sandwiched in between the two robbers. The third bandit entered and sat in the back of the car. They drove the complainant for about a mile and a half during which ride the robber on complainant's right spoke to him, searched him and took his money. They then put the complainant out of his car and drove away without him. During this ride complainant got a three-quarter view of the bandit's face who sat on his right, gun in hand. He got a full view of his face, however, both when he entered the car and when the complainant was put off the car at the end of the ride. Complainant cannot identify the robber at the driver's wheel nor the one who sat in the rear. With these facts in mind, it is not unreasonable to infer that the complainant had ample opportunity to see the features of this particular robber who sat on his right and that a subsequent identification of him was not based on a mere fleeting glance. Without hesitation he picked out Caruso as the robber with the gun, in the police station lineup when the latter was arrested five months later. The following morning, when confronted again with Caruso, the complainant assured the assistant district attorney to whom he then gave a statement of the robbery, that Caruso was the robber who sat on his right during the fatal ride. In felony court complainant identified Caruso, saying: "I remember his face, I made sure that I would get a good look at his face." In sworn and unsworn statements both in and out of court, complainant has always pointed his accusing finger at Caruso as the robber who sat on his right during the robbery and who took his money. The oft-repeated identifications were assuring and unequivocal. At the trial his testimony was convincing. At no time did he falter. The defendant denied, as he has always consistently denied, his complicity in the crime charged. He interposed an alibi defense which, though to some extent corroborated by the testimony of his father, was nevertheless materially weakened by his own statements to the assistant district attorney the day after his arrest which were in conflict with his testimony at the trial. Any other verdict but that of guilty would have been unquestionably a verdict against the weight of evidence.

About five months after defendant's conviction and just one year after the commission of this robbery, two individuals, Morris Gottlieb and Jack Jacobson, were apprehended by the police in Bronx county and after some questioning they admitted that they were two of the three bandits who participated in this robbery. Gottlieb and Jacobson recognized him as their victim and he identified Gottlieb as the robber who had sat on his right during the robbery and thereupon retracted his identification of Caruso saying that he had made an honest mistake. He did not identify Jacobson. His identification of Gottlieb and his explanation of the mistake, complainant bases upon a mole or birth mark on Gottlieb's upper right lip. To use his own language, " I took a close look and noticed the mole on his right upper lip that I was looking for it on Caruso when I identified him and he had a sore spot and I thought probably that's what it was." Q. " You mean that the mole or sore spot or pimple was the outstanding characteristic?" A. " Yes."

It is obvious that the question of the mole which complainant makes the distinctive characteristic by which he now differentiates Gottlieb from Caruso, constitutes a very important factor in the determination of this motion. Gottlieb has a birth mark or mole on his upper right lip. It is a conspicuous and prominent black mark even visible in his photograph on file with the police records since April, 1936. Conceding that there is some resemblance in the features of these two men, we cannot escape the conclusion that the presence or the absence of such a distinctive mark on the right upper lip of the bandit who sat on complainant's right during the course of the robbery as described, will be the determining factor in the exculpation or condemnation of Caruso who has no such distinctive mark. The all-important fact, therefore, to be determined on this motion, is whether or not the robber who sat on complainant's right had a mole on his right upper lip and whether that fact has been established by the defendant in these proceedings according to law.

It is a well-established principle that the recantation by a prosecution witness of testimony previously given by him against a defendant on trial does not necessarily entitle the latter to a new trial under the provisions of subdivision 7 of section 465 of the Code of Criminal Procedure. There is no form of proof so unreliable and untrustworthy as the testimony of a recanting witness. Such testimony may form the basis for a new trial only when the court is satisfied that the motives which actuate the recanting witness are not subversive of the proper administration of justice. The burden of proof is upon the defendant to show by a preponderance of evi-

dence that the judgment of conviction should be set aside and a new trial granted. (*People* v. *Shilitano*, 218 N. Y. 161; *People* v. *Farini*, 125 Misc. 300; *People* v. *Giordano*, 106 id. 235.)

As I view complainant's retraction in the light of these principles and compare it with his testimony at the trial of Caruso, before the grand jury and in felony court and with his statement to the assistant prosecutor who questioned complainant the morning following Caruso's arrest, one would have to strain his sense of credulity to accept the recantation at its full face value. In none of the occasions mentioned did complainant disclaim Caruso's identity for the reason he now advances, though I believe the opportunity was afforded him when at the trial he was asked by defendant's counsel, Q. " Did you notice anything about his face which caused you to form the conclusion that he was the man that held you up or one of the men that held you up?" A. " Just I recognized him." Standing alone, complainant's recantation is unreliable and, unless it can be shown that the motives actuating the recantation are not subversive of the proper administration of justice and that there are independent circumstances which tend to corroborate its genuineness, it would be valueless.

I am convinced, however, that such corroborating evidence has been produced.

Gottlieb and Jacobson, within a few days after their arrest, were indicted and pleaded guilty to the charge of robbery, first degree. They made confessions admitting not only their own participation in the robbery but also that of two others not yet apprehended but known to the police. They both disclaim any knowledge of Caruso and I believe their disclaimer to be true. The testimony taken by the court on this motion warrants the inference that before Gottlieb and Jacobson were arrested for the instant crime, the police had obtained their identity through confidential sources of reliable character. They both have testified that their confessions were made freely, without duress, intimidation, consideration or promise of reward. Except for a few minor discrepancies, Gottlieb and Jacobson substantially described the commission of the robbery as related by the complaining witness. It would seem that they have no ulterior motive and nothing to gain by their exculpation of Caruso. They have indicated to the police the identity not only of the third bandit but of the tip-off man who first suggested the robbery. The police are satisfied with the identity of these two missing accomplices and have stated that it corresponds with the information they had already received through confidential police sources. Jacobson, especially, is very fervent and convincing in his corroboration of Gottlieb's confession that he (Gottlieb) and

not Caruso was the man who sat on complainant's right and who did the things charged against Caruso. I was impressed by his apparent sincerity. His testimony seems genuine and untainted by motives which would indicate a criminal alliance to free Caruso. These confessions confirm the probative value of complainant's recantation.

Furthermore, there are two official records of the robbery in question on file at police headquarters, one known as a " Report of unusual occurrence by detectives " and the other as a " Complaint report." Both of these records are very significant and clarify what one might suspect to be a belated claim by complainant that the robber who sat on his right had a mole on his upper right lip. These reports were made and signed by the detectives to whom the complainant gave a description of the robbers within a half hour after the commission of the robbery and under the caption of " Description of perpetrators if no arrest " we find that one of the robbers is described therein as having a " birth mark on his upper right lip." This specific identification mark on one of the robbers was given to the detectives by the complainant, not only when his recollection of that morning's events was still fresh in his mind, but when there could be no suspicion of any interference by sinister agencies to influence him in his description. The perpetrators of the actual robbery were three in number. Two of them, the one that drove the car and the one who sat in the rear, complainant has not been able to identify or describe. The third, therefore, must have been the one with the birth mark or mole, a description which does not fit Caruso, but Gottlieb, and dispells any suspicion that the " mole on the upper right lip " may have been injected at the eleventh hour to build up the recantation. The origin of complainant's claim regarding the mole dates back to the robbery itself.

In the consideration of this motion, I have spared neither time nor thought. I have orally examined witnesses and read the minutes of two grand juries besides the statements made to the district attorney. The court is satisfied that an error of judgment rather than any malicious intent was the basis of Caruso's mistaken identification. Complainant had once before been the victim of a robbery and of a more serious assault. He may have been a little too hasty in his identification of Caruso five months after the robbery and, having once convinced himself, as he thought, that he had the right man, he consistently adhered to his original opinion. A no less regrettable feature of this unfortunate mistake, however, was the failure to advise the court at the time of trial of the existence of the two police records above mentioned, wherein

the complainant had described one of the robbers as having a birth mark on his upper right lip. These records did not come to light until the court, on its own motion, after the inception of these proceedings, directed that all records of police activities concerning the arrest of Caruso be submitted to the court. It must be remembered that Caruso's defense to the accusation besides his denial of the crime, was an alibi. He denied being present at the scene of the crime. The issue of the birth mark or mole was very material and when at Caruso's trial the complainant was asked by defendant's counsel, " Do you remember making this statement to the police officer in the station house: ' I recognize this man because of the mole on his lip?' A. I didn't say that. I said at the time I was stuck up he had a mark on the lip which could have happened by a scratch which dries up or a mole or something of the kind." Q. " Did he have that mark in the station house on his lip?" Had the court then been informed of the contents of those two police reports, I entertain no doubt as to what the result of the trial would have been. Damaging errors such as this should serve to remind arresting officers that their zeal to prosecute the guilty must not overshadow their duty to protect the innocent.

For the reasons herein stated, I am convinced that the defendant has established his right to a new trial by a fair preponderance of evidence. This motion is, therefore, granted, the district attorney not opposing, and since from the exhaustive investigation by the court it appears that a new trial would be but an idle gesture, the indictment should be dismissed and the defendant discharged.

Submit order accordingly forthwith.