In the Matter of THOMAS J. EVANS et al., Appellants, against GEORGE P. MONAGHAN et al., Constituting the Board of Trustees of the Police Pension Fund, Respondents.

Argued November 30, 1953; decided February 25, 1954.

*Murray A. Gordon, Daniel Jacobson, Robert J. Eliasberg, Barney Rosenstein* and *Irving Mendelson* for appellants. I. The charges and specifications of April 23, 1952, and the action taken against petitioners pursuant thereto were barred by the prior dismissal of the charge and specifications of May 15, 1951. (*United States* v. *Williams,* 341 U. S. 58; *Matter of Hernandez,* 172 App. Div. 467, 219 N. Y. 566; *Sealfon* v. *United States,* 332 U. S. 575; *Matter of Fusco* v. *Moses,* 304 N. Y. 424; *Osterhoudt* v. *Rigney,* 98 N. Y. 222; *People ex rel. McCabe* v. *Matthies,* 179 N. Y. 242; *Matter of Hyland* v. *Waldo,* 158 App. Div. 654; *McGillicuddy* v. *Monaghan,* 201 Misc. 650, 280 App. Div. 144; *People ex rel. Miller* v. *Elmendorf,* 42 App. Div. 306; *Ward* v. *Ward,* 67 App. Div. 121.) II. Petitioners were denied in their hearing the fair trial vouchsafed to them by the due process clause of the Fourteenth Amendment to the United States Constitution, the applicable rules and regulations of the police department, and the decisions of the courts of this State. (*Wong Yang Sung* v. *McGrath,* 339 U. S. 33; *Chicago M. & St. Paul Ry. Co.* v. *Polt,* 232 U. S. 165; *Ohio Bell Tel. Co.* v. *Public Utilities Comm.,* 301 U. S. 292; *Morgan* v. *United States,* 304 U. S. 1; *Matter of Delehanty* (*Sullivan-Goubeaud*), 202 Misc. 33, 40, 280 App. Div. 542, 304 N. Y. 725; *People ex rel. Schauwecker* v. *Greene,* 96 App. Div. 249; *Matter of Healy* v. *Bazinet,* 291 N. Y. 430; *Matter of Greenebaum* v. *Bingham,* 201 N. Y. 343; *Glasser* v. *United States,* 315 U. S. 60.) III. As the sole alleged proof offered by the prosecution was the uncorroborated testimony of an accomplice, there was no competent evidence in support of the conviction of petitioners. In any event the prosecution failed to sustain the burden of proof imposed upon it in these cases. (*Matter of Schadler* v. *Graves,* 258 App. Div. 451; *People ex rel. Kelly* v. *Waldo,* 161 App. Div. 731; *Matter of Reger* v. *Mulrooney,* 241 App. Div. 38; *Matter of Di Nardo* v. *Monaghan,* 282 App. Div. 5; *People ex rel. Madigan* v. *Sturgis,* 110 App. Div. 1; *People ex rel. Fallon* v. *Wright,* 7 App. Div. 185; *Matter of Charles* v. *Lyons,* 263 App. Div. 1027; *People ex rel. Hussey* v. *Woods,* 169 App. Div. 146, 216 N. Y. 648.) IV. Respondent Monaghan was without power to remove petitioners from the police force since they had retired from the department prior to the date of the charges. Respondents board of trustees of the

police pension fund have unlawfully withheld from petitioners their right to participate in that fund. (*Gorman* v. *City of New York,* 280 App. Div. 39, 304 N. Y. 865; *People ex rel. Fitzpatrick* v. *Greene,* 181 N. Y. 308; *Matter of Pierne* v. *Valentine,* 291 N. Y. 333.)

*Denis M. Hurley, Corporation Counsel (Victor J. Herwitz* and *Seymour B. Quel* of counsel), for respondents. I. The police commissioner's determinations herein are not barred under the rule of *res judicata,* which is not applicable to the determination rendered in a departmental disciplinary proceeding. (*Stephens* v. *Santee,* 49 N. Y. 35; *Osterhoudt* v. *Rigney,* 98 N. Y. 222; *People ex rel. Chase* v. *Wemple,* 144 N. Y. 478; *People ex rel. McCabe* v. *Matthies,* 179 N. Y. 242; *Matter of Hyland* v. *Waldo,* 158 App. Div. 654; *McGillicuddy* v. *Monaghan,* 201 Misc. 650, 280 App. Div. 144; *Matter of Stowell* v. *Santora,* 256 App. Div. 935; *Matter of Greenebaum* v. *Bingham,* 201 N. Y. 343; *Matter of Fusco* v. *Moses,* 304 N. Y. 424; *Matter of Equitable Trust Co.* v. *Hamilton,* 226 N. Y. 241.) II. Even if the rule of *res judicata* were to be applied, there would still be an implied power in the police commissioner to reopen and reconsider the prior determination. (*Ladd* v. *Stevenson,* 112 N. Y. 325; *Vanderbilt* v. *Schreyer,* 81 N. Y. 646; *Ellis* v. *Hearn,* 132 App. Div. 207.) III. The police commissioner's action in rehearing and reconsidering his prior determination was a proper exercise of his discretion in the circumstances of this case. (*Matter of McCarthy,* 304 N. Y. 601; *Hansen* v. *City of New York,* 299 N. Y. 136; *Los Angeles Investment Securities Corp.* v. *Joslyn,* 282 N. Y. 438.) IV. Petitioners' guilt was established after a trial fair in all respects. (*Gorman* v. *City of New York,* 304 N. Y. 865, 345 U. S. 962; *Matter of Pierne* v. *Valentine,* 291 N. Y. 333.) V. Petitioners' testimony in the prior hearing was properly procured and they may therefore be charged with perjury and fraud in connection therewith. (*Matter of Delehanty* [*Sullivan-Goubeaud*], 202 Misc. 33, 40, 280 App. Div. 542, 304 N. Y. 725; *People ex rel. Weston* v. *McClave,* 123 N. Y. 512; *People ex rel. Garvey* v. *Partridge,* 180 N. Y. 237; *People ex rel. Hayes* v. *Waldo,* 212 N. Y. 156.) IV. There was substantial evidence in support of all of the specifications charged and, since this was believed by the trier of the facts, the determination should not

be disturbed. (*Matter of Miller* v. *Kling*, 291 N. Y. 65; *People ex rel. Guiney* v. *Valentine*, 274 N. Y. 331; *Matter of Murphy* v. *Valentine*, 284 N. Y. 524.)

VAN VOORHIS, J. This is an article 78 proceeding, heard in the first instance by the Appellate Division, to review a determination of the respondent Monaghan as commissioner of the police department of the City of New York, dismissing each of the five petitioners from the police department. The Appellate Division confirmed the determination of the police commissioner.

On May 8, 1951, the Grand Jury of Kings County indicted certain members of the police department for conspiracy on charges of engaging in concerted action with one Harry Gross in promoting the systematic and continued business of book-making, horse rooms, wire rooms and other related conduct. Petitioners Thomas J. Evans, John E. McNamara, George M. Oest, Walter J. Sullivan and Eugene McGillicuddy were not named as defendants, but were alleged in these indictments to have received money from Gross or otherwise to have confederated with him in this enterprise. On May 9, 1951, the members of the police force named as defendants, as well as those named as coconspirators (including these petitioners) were all suspended from duty. On May 15, 1951, departmental charges were filed against them of conduct unbecoming an officer. Former Federal District Judge SIMON H. RIFKIND was appointed third deputy police commissioner, and directed to hear these charges. Commissioner RIFKIND found nine members of the police force guilty, and the rest (including each of the present petitioners) not guilty. The latter he recommended be restored to duty, which was done by order of the police commissioner.

Meanwhile the criminal indictment had been dismissed, due to refusal by Gross to testify in court to the substance of his testimony before the Grand Jury on which the defendants were indicted, and which evidently implicated these petitioners and others in the conspiracy. Commissioner RIFKIND was obliged to conduct his investigation on behalf of the police commissioner without the aid of testimony by Gross, who was convicted on twelve separate counts of book-making on which he received consecutive sentences of one year each, and five years more for contempt of court for refusing to testify. Each of these peti-

tioners denied the charges against him in testifying before Commissioner RIFKIND.

Gross changed his mind and decided to testify against these officers in a second departmental hearing. New departmental charges were preferred against petitioners, which were the same, in substance, as the original charges, except for the additional charge that they had perjured themselves before Commissioner RIFKIND. Former Surrogate DELEHANTY was appointed third deputy police commissioner to hear the new charges on April 25, 1952. Notice of these charges was served on petitioners on various dates between April 23, 1952, and April 28, 1952. These notices specified that the respective petitioner would be required to answer such charges at a hearing to be held on April 30, 1952.

After petitioners had been restored to duty on December 27, 1951, on recommendation of Commissioner RIFKIND, and before the second set of charges had been preferred, each of them applied for retirement from the police department, each retirement to take effect on a date specified according to subdivision c of section B18-4.0 of the Adiministrative Code of the City of New York (as amd. by Local Laws, 1951, No. 44 of City of New York), not less than thirty days subsquent to the execution and filing of the application for retirement. The dates thus specified by petitioners were: Thomas J. Evans, May 13, 1952, Walter J. Sullivan, May 16, 1952, George M. Oest, May 18, 1952, John E. McNamara, May 23, 1952, and Eugene McGillicuddy, May 23, 1952. Each retirement application was accompanied by a letter of transmittal reserving the right of the petitioner to retire forthwith, as thus stated in some of the applications and paraphrased in others, " which I now desire to do and which, except for Local Law #44 of the City of New York for the year 1951, I would do ". Each petitioner protested the constitutionality of that local law, preventing immediate retirement.

The alleged invalidity of the thirty-day requirement imposed by this local law is one of the grounds urged for reversal, but this point was adjudged adversely to petitioners in *Gorman* v. *City of New York*, (304 N. Y. 865, appeal dismissed 345 U. S. 962).

When the hearing convened at the Brooklyn Police Headquarters on April 30, 1952, Commissioner DELEHANTY called

attention to the dates of these applications for retirement, and stated that unless the departmental charges were earlier decided, each of the petitioners would have the absolute right to retire on the dates above mentioned, if then in good standing. An adjournment was taken to Monday, May 5th. One reason for this adjournment was the application then pending before Special Term, Supreme Court, by petitioners for a preliminary injunction restraining their impending trial before Commissioner DELEHANTY, upon the ground that the prior action of the police commissioner on recommendation of Commissioner RIFKIND constituted a bar under the double jeopardy clauses of the State and Federal Constitutions, and that it was *res judicata*. The injunction application was denied by Special Term on May 2, 1952 (*McGillicuddy* v. *Monaghan*, 201 Misc. 650, affd. 280 App. Div. 144). When the hearing reconvened on May 5th, all of petitioners pleaded not guilty to the departmental charges who had not already done so, and they or their attorneys asked for a further adjournment. In response to the unanimous requests for adjournment, Commissioner DELEHANTY asked the attorney for two of petitioners whether he was prepared to withdraw their applications for retirement and, upon receiving a negative answer, stated: " I think the community is entitled to know before it is committed irretrievably to the payment of pensions for the lifetime of the pensioner whether or not he has earned the pension, and I will proceed with the trial despite the application ". In order to obtain an adjournment, Commissioner DELEHANTY said, " All this man need do is withdraw his application ". A similar opportunity was given to the other petitioners either expressly or by implication, of which none of them took advantage. An adjournment was had until May 7th, at 10:00 A.M., when testimony was taken of Harry Gross. Before Gross' testimony began, special objections were taken by several of the counsel to proceeding at that time, by reason of particular circumstances affecting them or their clients, which it is unnecessary to describe here. These objections were properly overruled.

Numerous questions have been raised by petitioners on appeal to this court on account of which it is contended that the order of the Appellate Division should be reversed, and the de-

termination of the police commissioner annulled which removed petitioners from the force. It is contended that the charges which were the subject of the second departmental hearing before Commissioner DELEHANTY, were barred by the action taken by the police commissioner in restoring them to duty after the first departmental hearing upon the recommendation by Commissioner RIFKIND; it is asserted that they did not have a fair trial before Commissioner DELEHANTY, mainly due to his refusal to grant further adjournments; the point is made that the determination of the commissioner relieving them from duty is not supported by substantial evidence, in that the proof offered by the prosecution was mainly the testimony of Harry Gross, an accomplice, which is said to be uncorroborated by other evidence; and it is contended that the commissioner lacked power to remove petitioners from the police force for the reason that they had already retired from the department.

The last point depends upon the alleged invalidity of Local Law No. 44 of the City of New York for the year 1951, amending subdivision c of section B18-4.0 of the Administrative Code, preventing retirements from taking effect less than thirty days after the execution and filing of applications. This point was overruled, as has been stated, by the *Gorman* case (*supra*).

Concerning the point that the police commissioner's determination is unsupported by substantial evidence for the reason that Gross' testimony lacks corroboration, it must be noted that section 399 of the Code of Criminal Procedure does not apply to departmental trials such as this, which are civil in nature. Nevertheless, we have not lost sight of the statement made by the dissenting justices at the Appellate Division: " While technically section 399 of the Code of Criminal Procedure may not be formally applicable, the basic reason for its salutary purpose should in fairness and justice be not lost sight of in police trials upon charges involving criminality." (282 App. Div. 382, 396.) A thorough examination of the supporting evidence leads us to conclude, however, that although, strictly speaking, it may not amount to corroborative evidence of Gross to the extent required by section 399 in case of a criminal trial, it is more convincing than the supporting testimony in the other departmental trials cited in the dissenting opinion at the Appellate Division, such as

*Matter of Reger* v. *Mulrooney* (241 App. Div. 38, 44); *People ex rel. Kelly* v. *Waldo* (161 App. Div. 731), and *Matter of Di Nardo* v. *Monaghan* (282 App. Div. 5). The requirement of "some corroboration in order to command the judicial confidence" laid down in civil actions such as *Moller* v. *Moller* (115 N. Y. 466), and *McCarthy* v. *McCarthy* (143 N. Y. 235), was said in *Winston* v. *Winston* (165 N. Y. 553, 556-557) to be "not a rule of evidence, but one for the guidance of the judicial conscience. * * * The corroboration which such evidence should receive must, simply, be such as to justify a belief that the incriminating testimony given is true." To the same effect is *Yates* v. *Yates* (211 N. Y. 163, 171). This rule was enunciated in connection with testimony supporting that of privately employed detectives or prostitutes in divorce actions. It is relevant to what is required to ascribe veracity to the testimony of a convicted professional gambler such as Harry Gross. The chief corroborating circumstance is, of course, the magnitude of Gross' operations within the areas of command of petitioners as police officers, and the almost complete absence of any action taken by them to enforce the gambling laws against him. Gross' testimony consists of 450 pages. His detailed and rambling narrative outlined the history of the development of these underworld enterprises, including his methods of operation. He testified that in the principal year under consideration, he had 26 or 27 horse rooms operating in New York City, 20 to 25 of which were in Brooklyn, also eight or ten telephone places operating for book-making purposes, with 400 persons in his employ and 80 unpaid runners, and that these horse rooms did an average daily business of $1,500 to $2,000 apiece, and several of them in the areas in question as much as $8,000 to $10,000 per day. The names of many patrolmen and other police officers were mentioned, accompanied by testimony in detail concerning payments of money to these men for police protection. Whatever may have been the exact dimensions of these illegal gambling enterprises, there can be no doubt that they were of large proportions and that very little was done about stopping them. There is no occasion to enumerate here the multitude of details contained in the many pages of this record on appeal concerning the nature of petitioners' duties, and

the extent of this underworld empire. The defense consists almost entirely of denials that money was received from Gross, and, in most instances, of being aware of his existence. Except for a few character witnesses and the testimony of the chief inspector, that is all of the defense testimony which was introduced. When one recalls that Gross gave names of many policemen and other persons whom he charged with having been connected with this conspiracy, it is remarkable that none of them were called to refute Gross' version of the facts. The testimony of the chief inspector did more to complete the mosaic of Gross' account than it did to disrupt it. Among those named by Gross but not called by the petitioners as witnesses were brother officers, associates and friends of petitioners whom Gross said that he had met and done business with in their presence. No explanation or excuse was rendered for failing to call any of these persons to support petitioners' bare denials.

These circumstances would not be sufficient to implicate petitioners without the testimony of Gross, yet they lend credibility to his account of what occurred. Commissioner DELEHANTY, who had opportunity to observe this witness upon the stand, reported that his testimony seemed to be a recital in general of the actual occurrences as he recalled them. He added that '' The multiplicity of detail to which he testified and his restate-ment of detailed occurrences when he was required to make a statement negated the idea that the story told by him was a concocted tale in which he involved police officers maliciously.'' He regarded as significant the fact that the witness expressed resentment at the proceedings before the Grand Jury in Kings County, and later upon the trial of the indictment found by the Grand Jury, but that '' There was no evidence whatever of malice on the part of the witness toward any policeman named by him,'' and that '' Nowhere is there made the suggestion that a story once told by him has been substantially changed.'' If Gross' testimony be false in its essentials, he must have harbored a steady vindictive purpose to ruin these police officers, and been possessed of a remarkably systematic mind to have been able to have invented such an elaborate fiction, and to have kept so many imaginary details in the same relationship and context. He evidently has a nimble and alert

mind, and a mercurial temperament, and was animated by a steady ambition to make a financial success in the underworld, but although his mind is apparently clear and shrewd, it appears to be the reverse of systematic. It is hardly conceivable that he could have created out of whole cloth this complicated story in all of its ramifications, and then have poured it forth in so hit or miss a fashion, and still have kept the multitude of details consistent, as he did, regardless of at what point or in what aspect the narrative was resumed.

This is, of course, a case of unusual importance to petitioners and to organized society. It merits and has received the careful study and sustained attention of the police department and of the courts. The attendant circumstances lend sufficient credibility to these departmental charges to justify a belief on the part of the commissioner that the charges were true. In conjunction with the testimony of Harry Gross, they were enough to constitute substantial evidence before the commissioner to sustain his determination. In saying this, we are not unmindful of the circumstance that Gross hoped to eliminate part of his sentence by altering his previous refusal to testify.

Concerning the contention that petitioners were not granted a fair trial, it is true that the time allotted by Commissioner DELEHANTY for preparaion for trial was brief. Nevertheless, Gross' testimony was received on May 7th and 8th, after which an adjournment was taken until May 12th. That left time, it would seem, for petitioners to have communicated with at least some of the police officers who might have denied or disrupted the sequence of Gross' story in some regard. The trial would have begun earlier, and Gross' testimony would have been sooner available to petitioners, if they had not sought to enjoin the trial by applying for an injunction to the Supreme Court at Special Term. Moreover, Commissioner DELEHANTY plainly indicated that he would postpone the trial for a longer time if petitioners would withdraw their applications for retirement, in order that these issues might be decided prior to their pensions irrevocably taking effect. None of the petitioners was willing to postpone the effective date of his retirement. It was proper to conduct the trial with such expedition as was necessary in order to prevent their pensions from taking effect in

event that they were found guilty of these charges. If any of the petitioners considered that additional time to prepare, in the light of Gross' testimony, would have aided them materially in presenting their defenses, it is reasonable to assume that they would have deferred their retirement dates in order to do whatever was possible to vindicate their previous conduct. Instead of doing so, they sought to delay the trial and at the same time to hasten their retirements, apparently in order to render the trial futile insofar as their pensions were concerned.

The further ground on which it is contended that petitioners were denied a fair trial before Commissioner DELEHANTY, namely, that he could not find that they testified falsely before Commissioner RIFKIND, is likewise unfounded. The basis for this contention is that they were denied due process of law in being called as witnesses for the prosecution in the first departmental hearing. This contention was overruled in *Matter of Delehanty* (*Sullivan-Goubeaud*) (280 App. Div. 542, affd. 304 N. Y. 725, 727).

It remains to consider the principal point on account of which it has been argued in this court that the order appealed from should be reversed, which is that the outcome of the former disciplinary proceeding bars the maintenance of the second proceeding upon similar charges.

In considering the question of *res judicata,* it is assumed that the charges are the same which formed the basis of both departmental hearings, and that this circumstance is not altered by the fact that additional charges were preferred at the second trial that petitioners testified falsely at the first trial. *Osterhoudt* v. *Rigney* (98 N. Y. 222, 234) is cited to the effect that " The rule which forbids the reopening of a matter once judicially determined by a competent jurisdiction, applies as well to the decisions of special and subordinate tribunals as to decisions of courts exercising general judicial powers ". Other cases are cited to similar effect such as *People ex rel. McCabe* v. *Matthies* (179 N. Y. 242, 248); *Matter of Hyland* v. *Waldo* (158 App. Div. 654), and *Matter of Stowell* v. *Santoro* (256 App. Div. 934). Security of person and property requires that determinations in the field of administrative law should be given as much finality as is reasonably possible. The cases cited indicate that the rule of *res judicata* is applicable to such determinations

as well as to the courts wherever consistent with the purposes of the tribunal, board or officer. (Cf. Res Judicata in Administrative Law, 49 Yale L. J. 1250.) Such departures from the rule as there may be in administrative law appear to spring from the peculiar necessities of the particular case or the nature of the precise power being exercised, rather than from any general distinction between courts and administrative tribunals. Indeed, it is the instinct of our jurisprudence to extend court principles to administrative or quasi-judicial hearings insofar as they may be adapted to such procedures. The opinion of this court written by Judge Pound in *People ex rel. Finnegan* v. *McBride* (226 N. Y. 252) indicates the restraint which is to be exercised in permitting reconsideration even in the case of purely administrative action, to say nothing of that which is ordinarily characterized as quasi-judicial. Any general relaxation of the rule of *res judicata* is inadmissible even in strictly administrative matters.

Nevertheless, it would be beyond the spirit as well as beyond the letter of the doctrine of *res judicata,* as that doctrine is applied in court procedure, to bar the second departmental trial of petitioners. The unsealing of Harry Gross' lips after he had refused to testify at the first departmental trial, is tantamount to newly discovered evidence. The resulting situation is not unlike that where a witness is *non compos mentis* at the time of a trial but afterward regains his competency and ability to testify. It is true that Gross had testified before the Grand Jury, and that the Grand Jury's minutes had been made available to the police department. Nevertheless, it remained sterile for so long as Gross elected to submit to punishment for contempt rather than to testify where the testimony would count for something.

If a successful defendant has been placed in jeopardy in a criminal trial, there can be no new trial on the ground of newly discovered evidence or upon any other ground. This is a civil proceeding, however, and there is no double jeopardy nor other bar to a second trial on these departmental charges if, by analogy, the principle of newly discovered evidence should apply. There is essentially no distinction, one may think, between a witness who recants his testimony given upon a former trial, and one who later testifies to material facts after refusing to testify before. Certainly, in the latter instance, evidence

has become available which was not available at the former trial, due to the contumaciousness of the witness on the earlier occasion. This was not the fault of the corporation counsel's office in preparation for trial, and is beyond the intent of the cases holding that new trials should be denied for newly discovered evidence which due diligence would have uncovered in time to be used on the previous trial. Although Gross did not change his testimony, he altered his refusal to testify and made his testimony available for the first time in this forum. It was not recantation, strictly speaking, but was sufficiently similar so that the rule respecting recantation of witnesses can be used by analogy.

In *People* v. *Shilitano* (218 N. Y. 161) a motion was denied in behalf of a convicted defendant in a criminal prosecution for a new trial on the ground of newly discovered evidence, which consisted in the recantation of testimony given at the trial. Although this motion was denied for the reason that it was held not to be an honest recantation, and the rule was stated that new trials should be granted on this ground only under unusual circumstances, and after careful scrutiny of the change in testimony, it was recognized to belong to the category of newly discovered evidence, and that new trials may be granted upon that ground. In the opinion by Judge SEABURY at page 171 it is said: '' Nor can it properly be said that because the witness who now recants his testimony gave evidence upon the trial, the fact that he now repudiates his former testimony precludes proof of this fact from being regarded as newly-discovered evidence. It is not that the witness has been newly discovered, but the fact that he has recanted his testimony since the trial which makes that evidence newly discovered.'' The same thing may be said of a witness who through contumaciousness has previously refused to testify, but subsequently alters his refusal and furnishes important material evidence. The concurring opinion by Judge CARDOZO in the *Shilitano* case (*supra*) contains nothing to the contrary, but implies that such a motion should be granted on that ground if the court were dealing '' with an honest recantation '' (p. 182). The dissenting judges considered that the motion should have been granted, saying that '' The application for a new trial in this case is out of the ordinary '' (p. 199). It is thus clear that in the *Shilitano* case this court

indicated that the power to grant new trials upon this ground should seldom be exercised, but that the circumstances might be such as to warrant retrials for newly discovered evidence in the case of recantation of witnesses. This interpretation was adopted in the Special Term opinions in *People* v. *Farini* (125 Misc. 300, CARSWELL, J.), *People* v. *Giordano* (106 Misc. 235), *People* v. *Cohen* (117 Misc. 158), and *People* v. *Caruso* (172 Misc. 191). In the first two cases cited, the motion for new trial was denied for the reason that the alleged newly discovered evidence fell short of meeting the necessary requirements for recantations. In the *Caruso* and *Cohen* cases (*supra*) the newly discovered evidence (recantation) was found to be sufficient, and the motion was granted on that ground.

The analogy which exists to a greater or less degree, depending upon the circumstances of the case, between administrative law and court procedure, calls for drawing parallels wherever possible without defeating the essential objects of the administrative law, and this rule calls for application of the law of newly discovered evidence to administrative determinations where that can be done in conformity with the limitations on the rule which the courts have imposed upon themselves. This tends to assimilate the practice and procedure of administrative bodies to that of the courts. The present situation falls within the area in which new trials or hearings are granted by courts or by quasi-judicial or administrative officers or bodies. The cases of *People ex rel. Cohen* v. *York* (43 App. Div. 138), *Ward* v. *Ward* (67 App. Div. 121), and *Jones* v. *Lustig* (37 Misc. 834) involved situations where the alleged newly discovered evidence would not have changed the result and was adduced as a pretext to obtain a different ruling on the same facts, or where the evidence was available at the first trial. In this instance, the witness was available but not his testimony which was sufficiently important to change the result. The previous inability to obtain his testimony could not have been avoided by anything which could have been done through the exercise of greater diligence or skill.

The order appealed from should be affirmed, with costs.

LEWIS, Ch. J., CONWAY, DESMOND, DYE, FULD and FROESSEL. JJ., concur.

Order affirmed.