In the Matter of REALTY & INDUSTRIAL CORP., Appellant, *v.* JAMES W. GAYNOR, as Commissioner of the Division of Housing and Community Renewal, Respondent.

First Department, December 16, 1965.

*Robert S. Fougner* of counsel (*McLaughlin, Fougner & Messing,* attorneys), for appellant.

*Harold Zucker* of counsel (*Robert E. Herman,* attorney), for respondent.

RABIN, J. Petitioner is the owner of a 76-family-apartment house in the Village of North Pelham, Westchester County. In December, 1962, petitioner applied for a "fair net return" increase, basing such application upon a valuation arrived at by using the village assessed valuation as equalized. The respondent Commissioner rejected such valuation base and, employing the town assessment as equalized, found no increase warranted. Petitioner's attempt to review and annul that determination was rejected at Special Term and such rejection is now before us for review.

The issue presented on this appeal may be stated rather simply: May the Commissioner, in the circumstances of this case, employ the town equalized assessed valuation rather than the village equalized assessed valuation in arriving at a deter-

mination as to whether a "fair net return" increase in rentals is warranted?

The applicable statutory provision (Emergency Housing Rent Control Law, § 4, subd. 4, par. [a], cl. [1]; L. 1946, ch. 274, as amd. by L. 1957, ch. 755) provides in pertinent part as follows: "Such valuation shall be the current assessed valuation established by a city, town or village * * * by applying thereto the ratio which such assessed valuation bears to the full valuation as determined by the state board of equalization and assessment on the basis of assessment rolls of cities, towns and villages for the year nineteen hundred fifty-four".

While the language of the statute (and the implementing Rent and Eviction Regulation) appear to offer a choice of either the city, town or village equalized assessed valuation, the Commissioner concedes that in ordinary circumstances it selects the village figures as a basis for its computations. Why then the refusal to follow such procedure in this case? The Commissioner's response is that while the selection of village figures is the normal practice he is not bound to make such selection and may do otherwise where there are present exceptional circumstances which would render the adoption of such normal practice inequitable and violative of the spirit and purpose of the statute. Such exceptional circumstances, the Commissioner contends, are here present.

The Commissioner points out that in 1954, when the equalization rate for the village was determined, the village was and had been making its assessments independently of the town and at a lower percentage of true value than the town assessments. As a result the village equalization ratio was fixed at a figure substantially less than that arrived at for the town.

In 1955, however, the Board of Trustees of the village voted to discontinue its practice of making independent assessments and, effective February 1, 1956, determined to adopt completely the assessments made by the town. It is that fact that the Commissioner contends constitutes the exceptional circumstance which warranted deviation from its usual practice of using the village figures in its computations.

We agree that the rejection of the village figures is warranted in the circumstances. As pointed out by the Commissioner, the mechanics provided to enable a determination of value in this type of application were designed to achieve a result whereby the true value of a property could be determined from its assessed valuation. (See 1962 Report of the Temporary Commission to Study Rents and Rental Conditions; N. Y. Legis. Doc., 1962, No. 15, p. 13.) To accept the petitioner's position would

result in a false value being found and this would not be carrying out the legislative intent.

When the State Board of Equalization and Assessment adopted the 1954 equalization ratio it did so based upon the manner in which the village prepared its assessments and the relationship such assessments normally bore to actual value. At that time the village was still making its independent determinations of assessed valuation. In the light of that fact the Equalization Board fixed an overall equalization ratio of 47%. On the other hand the overall town ratio—based upon the town's assessments—was fixed at 64%. The specific subclass ratios fixed for apartment houses were 60% for the village and 88% for the town.

With the above in mind it is at once apparent that to now apply the 1954 village ratio to the town assessment (and that is what the village assessment is) would work an injustice and thwart the result sought to be achieved by the statute. It would mean that the town's practice of assessment at a higher figure would be equalized by a ratio arrived at bottomed on the village's practice of assessing at a lower figure—thereby producing a valuation base well above what would otherwise have been reached. The Commissioner has recognized the impropriety of such a result and we sustain his conclusion in that regard. The apparent purpose of employing the "equalization" method is just what the word implies—to effect equalization. Thus, if a property were located within a city, town and village and all three made independent assessments, the application of the respective equalization ratios should result in substantially similar figures of actual value. To use the assessed valuation of one governmental subdivision and then apply the equalization ratio of another—if they be different—would certainly lead to a distorted result.

As we have already stated, the basic objective is to find actual value through the use of the assessed valuation. If the village were desirous of determining the value of any property through the use of the town's assessment it would, of course, have to use the town's equalization rate. That is exactly what the Administrator did here and his determination should be supported.

In other words, if the village had accepted the town's actual valuation instead of its assessed value and then applied its own rate for the purpose of arriving at an assessment, the acceptance of the village equalization rate would lead to a proper result. However, the acceptance of the town's assessment, rather than its actual valuation, necessarily implies that there

was also an acceptance of the town's method of computation. Therefore, only by using the town's equalization rate may we arrive at the actual value of the property, which is the object of this proceeding. In sustaining the Commissioner's refusal to employ the village equalization rate we are not unmindful that it may be argued, in abstract legal contemplation, that the village assessment, albeit a blanket adoption of the town assessment is nonetheless still the village assessment. However, such semantic argument does not suffice to justify a construction of the statute which would require, in these circumstances, the use of the village equalization ratio and thus result in a destruction of the statutory purpose. As aforesaid, an examination of the statutory intention and the method of reaching an equalization ratio precludes such a result.

In seeking to overturn the Commissioner's determination the petitioner also relies upon what may be called the doctrine of " administrative *res judicata* " as enunciated in *Matter of Evans* v. *Monaghan* (306 N. Y. 312) and *Matter of Ess Pee Bee Realty Corp.* v. *Gabel* (22 A D 2d 207, affd. 16 N Y 2d 524). Such reliance arises from the fact that in a prior hardship application, made in connection with this same apartment building in 1960, the State Rent Administrator employed the 1954 village equalization ratio. Having then determined that such ratio was appropriate, it is urged that the Commissioner is bound thereby and must use a like figure in this proceeding. We do not agree.

The Commissioner, in response to the *res judicata* argument, concedes that at the time of the 1960 application the village had already instituted its plan of adopting the town assessments. However, at the time the prior determination was made such fact was not made known to the Administrator. In such context it may not be said that such prior use of the village equalization ratio must be continued. This is not a situation analogous to that presented in the *Ess Pee Bee* case. There two diametrically opposed determinations were made with respect to the same issue and based upon identical facts. Here the facts underlying the conflicting determinations are not the same. To the contrary, the facts upon which the respective determinations were made differ in a most material respect. In such context, the newly discovered evidence justifies the rendering of a determination different from that made in the first proceeding (cf. *Matter of Evans* v. *Monaghan,* 306 N. Y. 312, 324, *supra*). There is no warrant to the position that *res judicata* as applied to an administrative determination requires the continuance of a determination which would not have been made had the true facts been known.

Accordingly, the judgment of Special Term dismissing the petition should be affirmed, with costs and disbursements.

STALEY, J. (dissenting). In this article 78 proceeding the petitioner-appellant landlord seeks to review a determination of the State Rent Administrator which denied its application for a rent increase and revoked a prior determination granting an increase.

In 1960 the landlord, the owner of an apartment building in the Village of North Pelham, Westchester County, New York, applied for a rent increase under the Rent and Eviction Regulations to the Westchester Local Rent Administrator who granted the increase finding that the income from the property did not yield a 6% net annual return on its valuation. The local administrator computed the valuation of the property by applying the State Board of Equalization and Assessment equalization rate for 1954 of 60% for apartment buildings in the Village of North Pelham to the 1960 assessed valuation. The tenants protested the increase asserting that the 1960 rather than the 1954 equalization rate should have been applied and the State Rent Administrator denied their protest.

In December, 1962 the landlord applied again for another increase under the regulations claiming that the property did not yield a 6% net annual return on a valuation based on the 1962 assessed valuation after applying the 1954 village equalization rate for apartment buildings. The landlord's valuation was accepted by the local administrator and protested by the tenants who claimed that the overall equalization rate of 64% for the Town of Pelham should be applied. In 1954 the overall equalization rate for the Village of North Pelham was 47% and the overall equalization rate for the Town of Pelham was 64% and for the same year the equalization rate for apartment houses in the village was 60%, and the equalization rate for apartment houses in the town was 88%.

In November, 1955 the Village Board of Trustees adopted a resolution effective February 1, 1956 to discontinue its independent assessment of village properties and to adopt instead the assessments established by the town. The effect of this resolution on the landlord's property was to increase the assessed valuation from the village assessment in 1954 of $164,500 to $256,000 as assessed by the town in 1956.

One of the grounds for a rent increase under the Rent and Eviction Regulations arises when the net rental income from a property yields a net annual return of less than 6% of the valuation of the property. Section 4 (subd. 4, par. [a], cl. 1)

of the Emergency Housing Rent Control Law and subdivision 5 of section 33 of the Rent and Eviction Regulations define " valuation of property " as follows: " Such valuation shall be the current assessed valuation established by a city, town or village, which is in effect at the time of the filing of the application for an adjustment under this subparagraph properly adjusted by applying thereto the ratio which such assessed valuation bears to the full valuation as determined by the state board of equalization and assessment on the basis of assessment roles of cities, towns and villages for the year nineteen hundred fifty-four and certified for such year " and " provided, however, that where at the time of the filing of the application for an adjustment under this paragraph such board has computations for [such year] indicating a different ratio for subclasses of residential property in a city, town or village, the Administrator shall give due consideration to such different ratio ".

The manual of accounting procedures adopted by the respondent, effective June 30, 1957 when the statute for the first time prescribed use of the 1954 equalization rates (L. 1957, ch. 755) directs as follows: " Where the property is located within one of the villages indicated and there is a ratio for the subclass of housing accommodations involved in the section 33(5) application, that ratio will be used in computing the valuation of the property. Where there is no village ratio for such subclass of residential property the equalization rate for such village will be used."

Accordingly whenever a property is located in a village and such village has a separate ratio for subclasses of residential property such as apartment houses, the village rate for such subclasses must be applied.

Prior to the enactment of chapter 755 of the Laws of 1957 amending the Emergency Rent Control Law (§ 4, subd. 4, par. [a], cl. [1]) the valuation of property to be used as the basis for a rent increase was limited to assessed valuations established by a city or town and, by reason of the amendment, the section now provides " assessed valuation established by a city, town or village." It is clear that such amendment never intended to authorize the Administrator to choose one of three different ratios in determining the valuation of properties on applications for a rental increase.

When the village resolved to accept town assessments for properties within the village, it did not result in eliminating village assessments. The real effect of accepting the town assessors' valuations was merely to engage another agency to

evaluate the property within the village in place of village assessors with the result that the assessment roll is made up from the valuations placed on the village properties by the town assessors. Village assessments still remain and were, therefore, in effect in 1962.

Since a village equalization rate for apartment buildings as a subclass of residential property existed in 1954 for the Village of North Pelham and since a village assessment for the year 1962 was in effect as the village valuation of the petitioner's property at the time of its application for a rent increase, the provisions of the statute mandate the use of that village equalization rate in the determination of the petitioner's right to a rent increase. The statutory direction to apply " city, town or village ratios " was not intended to provide a selection of alternative ratios in the discretion of the Administrator, but rather directs the use of city ratios for city properties, town ratios for town properties and village ratios for village properties.

The judgment appealed from should be reversed, the determination of the respondent denying the application for a rent increase annulled and the determination of the Local Rent Administrator granting this rent increase reinstated.

BREITEL, J. P., and VALENTE, J., concur with RABIN, J.; STALEY, J., dissents in opinion in which McNALLY, J., concurs.

Judgment affirmed, with $50 costs to respondent.