In the Matter of Ess Pee Bee Realty Corp., Appellant, *v.* Hortense W. Gabel, as City Rent and Rehabilitation Administrator, Respondent.

First Department, December 15, 1964.

*Robert S. Fougner* of counsel (*McLaughlin, Fougner & Messing,* attorneys), for appellant.

*Florence R. Zimmerman* of counsel (*Beatrice Shainswit,* attorney), for respondent.

RABIN, J.   Petitioner landlord commenced an article 78 proceeding at Special Term to review a determination of the City Rent Administrator who denied it a rent increase.   The increase was sought pursuant to section Y51–5.0 (subd. g, par. [1]) of the Administrative Code of the City of New York (which provides for the granting of an increase where the property yields a net annual return of less than 6%).   The denial was based upon the Administrator's rejection of the purchase price as a valuation basis.   Special Term dismissed the petition on the merits and it is from the judgment of dismissal that the petitioner appeals.

Petitioner purchased the subject premises on May 1, 1959 and shortly thereafter, to wit, on August 27, 1959, filed an application for an increase sufficient to insure a net return of 6%. This application was filed pursuant to Emergency Housing Rent Control Law (§ 4, subd. 4, par. [a], cl. [1]; L. 1959, ch. 695, amdg. L. 1946, ch. 274 as amd.), the State having had jurisdiction at that time. The State Rent Administrator in computing the 6%, took as a base the price paid by the petitioner at the time he purchased the property. The application was granted in an order dated July 1, 1960 and a subsequent protest was denied.

Under the then existing law, in accepting that purchase price the State Administrator was obliged to find, and he did find, that the sale had been a bona fide one on normal financing terms. Such finding constituted a formal administrative adjudication.

Subsequently, and on August 4, 1961, the instant application for an additional increase was filed with the State Administrator, as was permitted by the then existing law. As indicated by the respondent the State Administrator commenced processing the instant application with the 1959 price as valuation price. The respondent states that he did so because he already had, in the earlier (1959) proceeding, accepted this sale price as the valuation base. If so, his action was in accordance with sound principles of administrative law (*Matter of Evans* v. *Monaghan*, 306 N. Y. 312).

On May 1, 1962 the proceeding was transferred to the City Administrator by operation of law (L. 1962, ch. 21). The City Rent Administrator denied petitioner's application. She refused to accept the official determination already made by the State Rent Administrator to the effect that the 1959 sale was had upon normal financing terms, but decided afresh that the 1959 sale was not had upon normal financing terms.

Thus, the question posed for resolution is whether the City Rent Administrator was bound by the prior determination of the State Rent Administrator. In other words, did she act properly in considering the question *de novo* and arriving at a finding contrary to the one already made?

It is not amiss to note that subsequent to the granting of the original application for an increase and prior to the filing of the instant application with the State Administrator the applicable statute had been amended (L. 1961, ch. 337) to provide that in determining whether or not the sale was had upon "normal financing terms", the State Administrator shall give due consideration to the following factors: (a) ratio of cash received by the seller to the sales price and the annual gross income; (b) total amount of mortgages as compared with the

assessed valuation; (c) ratio of sales price to the annual gross income, considering in this connection prior rent increases granted on this basis; (d) deferred amortization on purchase-money mortgages or assignment of such mortgages at a discount; and (e) any other facts which might have a bearing on financing. Notwithstanding this statutory amplification of the phrase "normal financing terms" (which amplification is found almost verbatim in the City Rent and Rehabilitation Law) the State Administrator accepted once again the 1959 sale as the base for fixing his valuation. The Administrator impliedly states in her brief that while the State Administrator was bound by his prior determination, she, his successor, is not so bound.

In support of that position she contends that she may consider the purchase price anew because, unlike the State law which virtually mandated acceptance of the sales price as the valuation base if the transaction was found to be, *inter alia,* one had "on normal financing terms", the City Rent and Rehabilitation Law provision virtually mandates the acceptance of the current assessed value as the basis for computing the 6% net return unless the Administrator, in the exercise of discretion, uses the sales price as the valuation base. This she may do if the transaction was a bona fide one, had upon "normal financing terms". However, the answer to that contention is a simple one. The issue presented to the City Administrator was exactly the same as the one that was passed on by the State Administrator, i.e., whether the transaction was a bona fide one had upon normal financing terms. The transaction being the same, and the issue being the same, we believe that as the State Administrator's successor, she must accept his prior determination. That conclusion finds support in the law that transferred jurisdiction from the State to the city. That law provides that "acts, orders, determinations, decisions * * * of the temporary state housing rent commission * * * which are in force at the time of * * * transfer *shall continue in force and effect as acts, orders, determinations, decisions * * * of such city housing rent agency* until duly modified, superseded or abrogated pursuant to * * * local laws, ordinances, rules or regulations." (Local Emergency Housing Rent Control Act, § 1, subd. 6; L. 1962, ch. 21; emphasis supplied.)

In our view, the language above quoted is not only a savings clause insuring as it does the continuance "in force and effect" of the orders of the State agency, but goes further and mandates that the "acts, orders, determinations and decisions" of the

State agency shall continue to be those of the city housing agency. Accordingly, giving that section the construction it should get, it is as though the City Rent Administrator herself had made the finding that the sale in question was made upon normal financing terms. True, indeed, she is given the right to modify and supersede any order theretofore made, but that right is no greater than the same right that the State Administrator had, and the right she now has to supersede her own orders. We must bear in mind the injunction contained in *Matter of Evans* v. *Monaghan* (306 N. Y. 312, 323) where VAN VOORHIS, J. said: " Security of person and property requires that determinations in the field of administrative law should be given as much finality as is reasonably possible." That does not preclude, however, the power to correct error by setting aside a determination which " was the result of illegality, irregularity in vital matters, or fraud." (*People ex rel. Finnegan* v. *McBride*, 226 N. Y. 252, 259.) It would not, however, permit a change in a determination already made — one not based upon reasons like those given above. It should be noted that the section referred to compels the continuance of prior determinations until " *duly* modified " [emphasis supplied]. " Duly ", a word of restriction, makes manifest that any modification, supersession or abrogation, must be in accordance with established principles of law.

We perceive no valid reason why the Administrator should not be bound by the determination theretofore made by the State Rent Administrator. She is obliged to consider the sale as bona fide, and one had upon normal financing terms. Hence, we conclude that her failure to use that sale in place of the assessed valuation is an exercise of discretion which we consider arbitrary.

However, the Administrator asserts that because the statute was changed to give her a right to exercise discretion — a right which the State Administrator did not have — she was not obliged to follow the prior determination with respect to the nature of the sale involved. We do not agree. While there is a difference in the powers granted under the respective statutes, it is nonetheless true that both Administrators had to travel the same road past the point where a determination is made whether the sale was bona fide and upon normal financing terms. The point of departure as to the respective powers occurs only after the time when the sale has been evaluated. Consequently, because they both had to decide the same issue, affecting the same property and involving the same transaction, the additional

power of discretion given to the City Rent Administrator is no sound basis for a refusal to accept the prior administrative determination.

Significant, too, is that the rent regulation plan, old or new, does not depend upon adjusting rents to a fluctuating market value. Rather, the principal purpose is to use a relatively fixed capital investment base upon which fair rents are computed. Thus viewed, it is even more meaningless to downgrade the purchase price, once accepted as one arrived at arm's length and on normal financing terms and used to derive the rents which are now being paid. This is further shown by the fact that the rent regulation plan does not, as a practical matter, contemplate any reduction in the value base, but only increases.

Accordingly, the judgment denying the application to annul the Administrator's determination should be reversed on the law, with costs, and the matter remanded to the Administrator for further proceedings not inconsistent with this opinion.

McNALLY, J. (dissenting). In an article 78 proceeding this appeal is from the dismissal of the petition to review the determination of the City Rent Administrator denying an increase of the maximum rent sought under section 33.5 of the City Rent, Eviction and Rehabilitation Regulations to effect a 6% net annual return. On August 27, 1959 petitioner made its first application for similar relief to the State Rent Commission. In that proceeding the 1959 purchase price was credited and the increase granted thereon.

The instant application for the increase was made August 4, 1961 before the then State Rent Commission. A memorandum of the State Rent Administrator dated November 30, 1961 carries the notation of the approval of the 1959 purchase price of the subject property as the basis. Said memorandum on its face establishes said basis was consequent on the one adopted in the prior proceeding.

On May 1, 1962 administration of residential rent control was transferred to the City Rent and Rehabilitation Administration. In the light of the city residential rent control law (Administrative Code of City of New York, § Y51–5.0, subd. g) effective May 1, 1962, the District Rent Director by memorandum dated November 14, 1962 and approved December 12, 1962 established the basis at $410,000, the assessed valuation on the date of filing of the instant application. Said basis is grounded on the finding that the initial tentative basis was consequent on the valuation determined in the prior proceeding and cannot be accepted under the intervening city statute and regulation. The Director found the cash payment on the purchase price

relied on by petitioner to be less than 20% thereof and the total mortgages to be in excess of the assessed valuation, which factors the Director found served to disqualify the purchase price as the basis for the rent increase sought.

Petitioner's protest filed January 18, 1963 alleged the Director was precluded from refusing to accept as the basis that which had been determined by the State Administrator in the prior proceeding. The protest was denied by determination dated August 22, 1963 stating the record had been reviewed *de novo* and thereon the Administrator affirmed the District Rent Director's order.

The city rent statute expressly confers discretionary power in the Administrator in respect of the basis for an increase of maximum rent. It provides, in part: " Such agency *may* make a determination that the value of the property is an amount different from the assessed valuation " (Administrative Code, § Y51–5.0, subd. g, par. [1], subpar. [a], cl. [1], subcl. [ii]; emphasis supplied). The discretion is not an arbitrary one; its area is defined by statutory criteria. The instant determination is within the permissible statutory area of discretion. (*Matter of East 53rd Inc.* v. *Gabel,* 21 A D 2d 647; *Matter of Van Cortland Assn.* v. *Gabel,* 21 A D 2d 192; see, also, *I. L. F. Y. Co.* v. *Temporary State Housing Rent Comm.,* 10 N Y 2d 263, 268.)

Appellant argues respondent is required to explain the departure from the basis determination of the State Administrator in the prior proceeding. This is in the nature of a plea of *res judicata.* The determination in the prior proceeding would be *res judicata* were it not for the intervening city statute. (*Matter of Evans* v. *Monaghan,* 306 N. Y. 312, 323, and cases cited therein; 1 N. Y. Jur., Administrative Law, §§ 149, 150.)

The record demonstrates that the prior determination was considered and found not to preclude the exercise of the statutory discretion subsequently granted. The intervening statute enables the exercise of discretion not present at the time of the prior determination and the exercise of the statutory discretion is unaffected by the principle of *res judicata.* (*State Farm Ins. Co.* v. *Duel,* 324 U. S. 154, 162; *Blair* v. *Commissioner,* 300 U. S. 5, 9; *McGillis* v. *McGillis,* 154 N. Y. 532, 543; 2 Freeman, Judgments [5th ed., 1925], § 713, p. 1505.) Moreover, appellant has no vested interest against the change of the statute which afforded the advantage it now seeks to perpetuate. (*I. L. F. Y. Co.* v. *Temporary State Housing Rent Comm., supra,* p. 270.)

The Local Emergency Housing Rent Control Act (L. 1962, ch. 21) does not aid the petitioner. On the contrary, it affirms the statutory purpose to enable local rent control uncomplicated by prior determinations of the State Administrator. Chapter 21 became effective February 17, 1962. It provides for local rent regulations within a city of a population of one million or more as of May 1, 1962. Subdivision 6 of section 1 of the statute enables the enactment of local laws as provided in subdivision 5 of section 1 which expressly states the local laws " need not be consistent with the provisions of the state emergency housing rent control law or with the rules and regulations of the temporary state housing rent commission thereunder ".

Until the adoption of a local law, subdivision 6 authorizes the city housing rent agency to adopt rules and regulations which " need not be consistent with the rules, regulations and orders of the temporary state housing rent commission ". It is only if no local law has been enacted, and no rules and regulations of the city housing rent agency have been promulgated that the orders and determinations of the Temporary State Housing Rent Commission continue in force.

The pertinent local law here involved became effective May 1, 1962 and provides for discretionary power in the City Rent Administrator not vested in the State Administrator at the time the 1959 proceeding was determined. The Local Emergency Housing Rent Control Act makes clear the legislative purpose to enable local rent regulation freed from the necessity of consistency with prior determinations and regulations of the State Rent Administrator.

It is to be noted also that the respondent does not seek a modification or the abrogation of the prior determination of the State Administrator. Contrariwise, the City Rent Administrator is content to continue in force the rents fixed by the State Administrator. What is involved is the attempt to compel the City Rent Administrator to increase rents on a basis not determined by her and which under the local law, within her discretionary power, she has determined is not a proper basis.

The determination should be confirmed.

BREITEL, J. P., STEVENS and STEUER, JJ., concur with RABIN, J.; McNALLY, J., dissents in opinion.

Judgment reversed, on the law, with $50 costs to the appellant, and the matter remanded to the respondent Administrator for further proceedings not inconsistent with the opinion of this court filed herein.