In the Matter of CENTENNIAL RESTORATIONS COMPANY, Appellant, v ROBERT ABRAMS, as Attorney-General of the State of New York, Respondent.

Third Department, June 18, 1992

### APPEARANCES OF COUNSEL

*Lerner, Lapidus & Franquinha, P. C. (Steven R. Lapidus* and *Wayne R. Smith* of counsel), for appellant.

*Robert Abrams, Attorney-General (Herald J. Hurwitz* of counsel), for respondent.

OPINION OF THE COURT

LEVINE, J.

Petitioner is the sponsor of a noneviction cooperative offering plan (hereinafter the plan) to convert an 18-unit residential apartment building located in New York County into cooperative ownership. Petitioner submitted the plan for filing with respondent on March 28, 1989. Included with the submission of the plan was an "affidavit of sponsor of no excessive long term vacancies". Under General Business Law § 352-eeee (2) (e), respondent may not accept an offering plan for filing unless "[he] finds that an excessive number of long-term vacancies did not exist" on the date the offering plan was first submitted. Long-term vacancies are statutorily defined as "dwelling units not leased or occupied by bona fide tenants for more than five months prior to the date of such submission", and an excessive number thereof consists of, *inter alia,* more than a 10% rate of such vacancies (General Business Law § 352-eeee [2] [e]). In the affidavit petitioner submitted, it was disclosed that two units (apartment Nos. 1 and 2) had been occupied for over five years as business offices by Sackman Enterprises Inc., the selling agent, and by a construction company, one of whose principals was also a principal of petitioner.

Respondent and petitioner had numerous exchanges of correspondence concerning certain deficiencies noted by respondent in the plan. Included among the deficiencies identified was the possible existence of excessive long-term vacancies as to other units in the building (apartment Nos. 5W and 7W), although no objection was raised regarding the two apartments described in petitioner's affidavit of no excessive long-term vacancies. Upon resolution of the various deficiencies, respondent accepted the plan for filing as of March 29, 1990. The following July respondent accepted a first amendment to the plan, and in December 1990 petitioner submitted for filing a second amendment declaring the plan effective based upon purchase agreements for three units, constituting the requisite subscriptions to purchase at least 15% of the 18 units offered *(see,* General Business Law § 352-eeee [1] [b]; [2] [c] [i]).

Several days after the submission of the second amendment to the plan declaring it effective, respondent received a letter from the tenants' committee at the building complaining of

the "warehousing" of apartments by Sackman Enterprises.* Respondent then reexamined the documents on file and, by letter dated February 21, 1991, advised petitioner of an intention to reject the plan for filing retroactive to March 29, 1990 because of excessive long-term vacancies with respect to the use of apartment Nos. 1 and 2 "as offices by entities controlled by the sponsor and its principals", rather than by bona fide tenants. Respondent acknowledged that petitioner had "always disclosed the business nature of the tenancies" of the two apartments.

As to the second amendment declaring the plan effective, respondent conducted an investigation of the purchasers named in the amendment and then advised petitioner by letter dated April 26, 1991 that two of the three subscribers were not bona fide purchasers representing that they or an immediate family member would occupy the unit when it became vacant (see, General Business Law § 352-eeee [1] [b]; [2] [c] [i]). In the same letter, respondent advised petitioner of a final determination rejecting petitioner's plan for filing retroactive to March 29, 1990 because of the long-term vacancies in apartment Nos. 1 and 2.

Petitioner then commenced this CPLR article 78 proceeding seeking a judgment (1) declaring that the plan with the second amendment is accepted for filing, (2) directing respondent to issue a letter of acceptance, (3) annulling respondent's letters of February 21, 1991 and April 26, 1991 rejecting the plan for filing as unlawful, arbitrary and capricious, and (4) tolling the statutory time period for petitioner to obtain the required number of subscriptions until 15 days after service of the final judgment in this proceeding. After respondent answered the petition, Supreme Court granted petitioner's tolling request upon consent and, in all other respects, dismissed the petition. The court held that, based upon an unreported 1989 decision of Supreme Court, New York County, respondent reasonably determined that the extended use of residential apartments as offices of any affiliate of the sponsor was not a bona fide tenancy and constituted a long-term vacancy for purposes of General Business Law § 352-eeee (2) (e). Therefore, the court ruled that equity permitted respondent's revocation of the

---

* The purpose of the statutory ban on excessive long-term vacancies was to prevent "warehousing" of apartments in order to reduce the number of purchase agreements by tenants in occupancy necessary to declare an offering plan effective (see, Matter of Forest Vistas Co. v Abrams, 103 AD2d 730, 731, affd 64 NY2d 928).

prior acceptance of the plan for filing because of the "mutual mistake" of petitioner and respondent in not recognizing that such disclosed business occupancy by an affiliate of the sponsor was a long-term vacancy. The court also ruled that respondent had the authority to investigate the bona fides of any purchaser's expressed intent to occupy a unit subscribed for and, having reasonably found at least one purchaser not bona fide, to reject petitioner's second amendment declaring the plan effective. This appeal followed.

■ We disagree with Supreme Court's conclusion that respondent had the inherent authority to redetermine the status of apartment Nos. 1 and 2 as long-term vacancies and, based thereon, to retroactively revoke his prior acceptance of petitioner's plan for filing. Concededly, petitioner did not misrepresent any material fact with regard to the occupancy and use of the two apartments, but made a completely adequate disclosure for respondent to have identified and noted this deficiency within the statutory time frame of not less than four months nor more than six months from the March 1989 filing date of the plan by petitioner *(see,* General Business Law § 352-e [2]). Respondent's change in position did not occur as a result of the discovery of new evidence. It was merely the correction of an inadvertent disregard of respondent's prior interpretation of the statute as applied to the disclosed facts when the error was discovered upon receipt of the tenants' committee complaint.

In the absence of any statutory reservation of discretionary agency authority to reconsider its determinations, New York applies a long-standing policy of finality to the non-quasi-judicial determinations of an administrative agency. "Public officers or agents who exercise judgment and discretion in the performance of their duties may not revoke their determinations nor review their own orders once properly and finally made, however much they may have erred in judgment on the facts, even though injustice is the result" *(People ex rel. Finnegan v McBride,* 226 NY 252, 259). An erroneous determination may only be corrected if the error "was the result of illegality, irregularity in vital matters, or fraud" *(supra,* at 259; *see, Matter of Drew v State Liq. Auth.,* 2 NY2d 624, 627-628; *Matter of Ess Pee Bee Realty Corp. v Gabel,* 22 AD2d 207, 211, *affd on opn below* 16 NY2d 524; *Matter of Cupo v McGoldrick,* 278 App Div 108, 112; *Matter of D & D Realty Corp. v Coster,* 277 App Div 668, 671-672).

We reject respondent's argument that the initial inadver-

tent failure in this case to apply the statutory ban against excessive long-term vacancies to the sponsor's affiliates' business use of apartment Nos. 1 and 2 constituted an "irregularity in vital matters" permitting redetermination of respondent's prior acceptance of petitioner's plan for filing. In *Matter of 54/55 Sixth Realty Corp. v Leventhal* (51 AD2d 714, *affd* 42 NY2d 935), the court annulled the revocation of a prior order decontrolling the rental on an entire penthouse apartment pursuant to the "luxury" apartment rent decontrol provisions of the New York City Rent, Eviction and Rehabilitation Regulations. The stated basis for the revocation of the rent decontrol order was the landlord's failure to disclose that, since 1944, the penthouse had been separately occupied as two self-contained apartments each of which was registered as such with the City's Office of Rent Control. Under the express provisions of the Administrative Code of the City of New York and the Rent, Eviction and Rehabilitation Regulations then in force, luxury apartment rent decontrol was only available to premises occupied for single-family occupancy and, thus, as the dissent in that case pointed out, the original decontrol order was violative of law *(see, supra,* at 715 [dissenting mem]). Here, respondent argues that the initial acceptance for filing of petitioner's plan violated the statutory prohibition against excessive long-term vacancies in General Business Law § 352-eeee (2) (e).

The rent control regulations in effect in *Matter of 54/55 Sixth Realty Corp. v Leventhal (supra)* incorporated the New York common-law standard of finality of administrative determinations, previously discussed, permitting revocation of a prior order only upon a showing of " 'illegality, irregularity in vital matters, or fraud' " *(supra,* at 715). In that case, the majority at the Appellate Division held that "[r]espondent's failure to discover facts [regarding the dual occupancy of the penthouse apartment] within its own files" did not amount to such " 'illegality, irregularity in vital matters, or fraud' " *(supra,* at 715). The Court of Appeals agreed with the Appellate Division majority that the belated discovery of facts within the agency's own files was "not the type of irregularity contemplated by * * * the regulations" *(Matter of 54/55 Sixth Realty Corp. v Leventhal,* 42 NY2d 935, 937, *supra).* In our view, *Matter of 54/55 Sixth Realty Corp. v Leventhal (supra)* is a fortiori controlling on the insufficiency of respondent's showing of illegality or irregularity to justify revocation of the original determination to accept petitioner's plan for filing.

The facts upon which the redetermination here was made were not merely discoverable from agency files, they were fully disclosed in petitioner's submission. Consequently, we find no inherent power on the part of respondent in the instant case to revoke his previous acceptance of petitioner's plan for filing.

■ We are equally unpersuaded by respondent's alternative argument that the statute grants him implied authority to revoke an acceptance of an offering plan for filing because of his continuing express statutory authority to investigate the possible falsity or misleading nature of statements in an offering plan already filed. The case law, including authorities cited by respondent on this issue, draws a sharp distinction between the role of respondent in reviewing an offering plan submitted for filing pursuant to General Business Law §§ 352-e and 352-eeee, and his discretionary continuing authority under General Business Law §§ 352 and 354 to investigate possible fraud and misrepresentations in real estate conversion offerings such as this (see, e.g., Matter of Greenthal & Co. v Lefkowitz, 32 NY2d 457, 462-463; Matter of Gonkjur Assocs. v Abrams, 88 AD2d 854, 855-856, affd on mem below 58 NY2d 878). Indeed, the statutory time constraints within which respondent must determine whether to accept a plan for filing (see, General Business Law § 352-e [2]), held to be mandatory and not merely directory (see, Matter of Gonkjur Assocs. v Abrams, 57 NY2d 853, 856), strongly militate against any implied continuing power of respondent to revoke a previous acceptance of an offering plan for filing, at least where, as here, there has been an accurate, complete disclosure of the relevant facts in the original submission of the plan. Accordingly, respondent's revocation of his acceptance of petitioner's plan for filing must be annulled.

■ We reach a contrary conclusion, however, with respect to respondent's rejection of petitioner's second amendment declaring the plan effective on the ground that petitioner failed to meet the statutory requirement of obtaining purchase agreements for at least 15% of the units offered from "bona fide tenants in occupancy or bona fide purchasers who represent that they intend that they or one or more members of their immediate family intend to occupy the unit when it becomes vacant" (General Business Law § 352-eeee [1] [b]). Respondent has the general power to inquire into the truth and accuracy of disclosures made in a proferred amendment to an offering plan (see, Matter of 160 W. 87th St. Corp. v

*Lefkowitz,* 50 AD2d 732, 733). Likewise, respondent has the power to investigate the bona fides of the named prospective purchasers and reject any that are not bona fide *(see, Matter of Knopf v Abrams,* 174 AD2d 915, 916, 918, *lv denied* 78 NY2d 861; *see also, Matter of Grenader v Lefkowitz,* 47 AD2d 359, 360-361, *mod on other grounds* 42 NY2d 907). In concluding that a subscriber named in petitioner's second amendment was not a bona fide purchaser because he intended mainly to sublet the apartment to friends, rather than intending an occupancy by himself or by members of his immediate family, respondent reasonably gave effect to all of the language of the statutory 15% minimum subscription requirement *(see, Treger Mgt. Co. v Abrams,* 180 AD2d 614). Therefore, respondent could properly reject petitioner's second amendment to the plan because the required minimum number of subscriptions had not been obtained for the plan to become effective.

MIKOLL, J. P., YESAWICH JR., MERCURE and CREW III, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by annulling respondent's determinations dated February 21, 1991 and April 26, 1991 insofar as they revoked respondent's March 29, 1990 acceptance of petitioner's offering plan for filing, and, as so modified, affirmed.