■ In the Matter of MIGUEL DURAN, Petitioner, v DAVID GUNN, as President of the New York City Transit Authority, et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the New York City Transit Authority (hereinafter Transit Authority), dated May 9, 1986, which, after a hearing, terminated the petitioner's employment.

Adjudged that the determination is confirmed and the proceeding is dismissed on the merits, without costs or disbursements.

The petitioner, who was employed as a bus operator by the Transit Authority respondents, was charged with making illegal sales of Transit Authority bus transfers to an undercover agent for a sum of money on June 13, 1985 and June 17, 1985. After a disciplinary hearing, the charge was sustained and the petitioner was dismissed from service. Thereafter, the petitioner commenced the instant proceeding to set aside that determination.

Initially we note that the petitioner's acquittal after a jury trial of criminal charges predicated upon the same sale transactions has no bearing upon the determination terminating his employment, because the burden of proving guilt beyond a reasonable doubt at a criminal trial is not applicable to administrative proceedings *(see, Matter of Berman v Gillroy,* 198 Misc 369, *affd* 278 App Div 907, *affd* 305 NY 688, *rearg denied* 305 NY 797, *cert denied* 347 US 921; *Alsbury v United States Postal Serv.,* 530 F2d 852, *cert denied* 429 US 828). Our scope of review is limited to ascertaining whether or not the agency's finding that the petitioner was guilty of the charge is supported by substantial evidence in the record. Substantial evidence is "proof sufficient to satisfy a reasonable man, of all the facts necessary to be proved in order to authorize the determination" *(Matter of Weber v Town of Cheektowaga,* 284 NY 377, 380). In other words, the record as a whole must contain reliable evidence sufficient to warrant judicial confidence in the essential soundness of the administrative determination *(see, Matter of Farry v Ward,* 126 AD2d 7, *lv granted* 69 NY2d 612; *Matter of Evans v Monaghan,* 306 NY 312, 319-320). The following evidence was adduced at the hearing.

According to New York City Transit Police Officer Armstrong, a paid confidential informant was given money to purchase transfer tickets from the petitioner on June 13, 1985 and June 17, 1985, as part of an investigation regarding complaints of illegal sales of transfers at the Williamsbridge Plaza bus terminal. On each date, he observed the informant having a conversation with the petitioner. Thereafter, the informant arranged a rendezvous with the petitioner by waiting at the last bus stop on the petitioner's run. When all the passengers on the petitioner's bus disembarked, the informant entered the bus.

Regarding the June 13, 1985 transaction, Transit Police

Officer Marsh testified that from her surveillance position she observed the informant take a seat directly across from the petitioner's driver's seat. The petitioner removed orange tickets from the small window on the left side of the driver's seat, counted them, and then proceeded to walk to the rear of the bus. Although she was unable to read any writing on the orange tickets, she maintained that the orange tickets were bus transfers as she had earlier observed orange transfer tickets beside the window of the petitioner's bus while at the Williamsbridge Plaza bus terminal. As the petitioner walked to the rear of the bus, he picked up a bag, presumably garbage, exited the bus and threw the bag in a garbage can. Upon reentering the bus, the petitioner, who was still holding the orange tickets in one hand, stooped down in front of the informant. When the petitioner straightened, he no longer had the tickets in his hand. Instead, he had money which he placed in his pants pocket. The informant exited the bus, which pulled away from the curb, and handed the surveillance team two books of bus transfers (a total of 50 tickets), which had been issued for run number six. According to the respondents' witnesses, on June 13, 1985, the petitioner had been issued transfers for run number seven. However, he was reassigned to run number six at the bus terminal and was driving a bus on run number six at the time of the confidential informant's purchase of transfers from him.

Regarding the June 17, 1985 transaction, aside from observing the informant enter the bus, neither Officer Armstrong nor Officer Marsh was in a position to observe what transpired while the informant was alone on the bus with the petitioner. After exiting the bus, the informant turned over to the surveillance team three books (75 tickets) of bus transfers. The serial numbers on the transfers matched those specifically issued to the petitioner on June 17, 1985. Transcripts of the tape recordings of the conversation between the informant and the petitioner on June 13, 1985 and June 17, 1985, were admitted into evidence. The English translation for the Spanish word used by the informant on June 13, 1985, when referring to the number of transfers to be received during the transaction, was "two notebooks".

The petitioner testified in his defense at the disciplinary hearing. According to petitioner, the informant attempted to frame him by making it appear that he sold the informant transfers when the petitioner actually sold the informant books containing slips for an illegal numbers game, called "libretta". The petitioner testified that the English translation

for libretta is note book and explained that he purchased the books of illegal numbers for his own use, but sold them to the informant on June 13 and June 17, at the latter's request, to get the informant off his bus.

The confidential informant did not testify at the hearing because he apparently could not be located. After the hearing, the petitioner submitted to the Hearing Officer, by letter dated February 26, 1986, a transcript of the informant's former testimony at the petitioner's criminal trial to demonstrate that the informant had a history of dishonest behavior, illegally sold transfers for a living, and had a motive to fabricate his testimony that he had purchased from the petitioner, for money, two books of transfers on June 13, 1985, and three books of transfers on June 17, 1985.

A booklet of illegal number slips proffered by the petitioner at the hearing measured approximately three quarters of an inch wide by two inches long. The petitioner testified that the color of the slips changes every Saturday, from week to week. He could not recall the color of the number slips for either June 13 (a Thursday) or June 17 (a Monday). The bus transfers for both dates were orange and measured approximately 1½ inches wide by 7 inches long. Officer Marsh maintained that she did not see tickets of the same size as the illegal number slips in the petitioner's hand on June 13, 1985.

Although the testimony of the petitioner and the Transit Authority's witnesses at the hearing was conflicting, it was for the agency to determine which testimony to accept or reject *(see, Matter of Brathwaite v Gunn,* 125 AD2d 305). Upon reviewing this record, we conclude that the circumstantial evidence of guilt adduced by the Transit Authority police officers sufficed to corroborate the confidential informant's former inculpatory trial testimony and to command our confidence in the soundness of the determination at issue *(cf., Matter of Farry v Ward, supra; Matter of Eppler v Van Alstyne,* 93 AD2d 930; *Matter of Gitlin v Hostetter,* 27 NY2d 934). Considering the nature of the charge, we do not find the penalty of dismissal to be an abuse of the Transit Authority's discretion *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222). Thompson, J. P., Niehoff, Rubin and Sullivan, JJ., concur.